70 F.3d 783
 64 USLW 2399, 19 Employee Benefits Cas. 2280
 Philip BERNSTEIN, Personal Representative of the Estate of
Jeffrey Bernstein, Plaintiff-Appellant,
v.
CAPITALCARE, INCORPORATED, Defendant-Appellee.
Whitman-Walker Clinic, Legal Services Department; Lambda
Legal Defense and Education Fund, Incorporated,
Amici Curiae.
 No. 94-2448.
 United States Court of Appeals,
Fourth Circuit.
 Argued Sept. 27, 1995.
Decided Dec. 4, 1995.
 
 ARGUED: Jacqueline Elizabeth Bennett, Hudgins, Carter & Coleman, Alexandria, Virginia, for Appellant. Charles Joseph Steele, Foley & Lardner, Washington, D.C., for Appellee. ON BRIEF: Richard D. Carter, Hudgins, Carter & Coleman, Alexandria, Virginia, for Appellant. Mary Atchley Jester, Foley & Lardner, Washington, D.C., for Appellee. Elizabeth A. Seaton, Dinah G. Wiley, Whitman-Walker Clinic, Washington, D.C.; Catherine Hanssens, Lambda Legal Defense and Education Fund, Inc., New York City, for Amici Curiae.
 Before MICHAEL and MOTZ, Circuit Judges, and CHAPMAN, Senior Circuit Judge.
 Vacated and remanded by published opinion. Senior Judge CHAPMAN wrote the opinion, in which Judge MICHAEL and Judge MOTZ joined.
 OPINION
 CHAPMAN, Senior Circuit Judge:
 
 
 1
 This is a declaratory judgment action under section 502(a)(1)(B) of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. Sec. 1132(a)(1)(B), to determine entitlement to health benefits under an employee welfare benefit plan. Plaintiff-Appellant, Philip Bernstein ("Philip"), brought this action as the personal representative of the estate of his brother, Jeffrey Bernstein ("Jeffrey"), who died of AIDS-related complications in July 1992. Philip claims that Jeffrey was entitled to coverage under his health plan with Defendant-Appellee, CapitalCare, Inc. ("CapitalCare"), for his hospitalization at the New York Hospital from May 6, 1992 to July 8, 1992. Jeffrey was a member of a health maintenance organization ("HMO") operated by CapitalCare in the Washington, D.C. area.
 
 
 2
 On cross-motions for summary judgment, the district court ruled that Jeffrey's hospitalization was not covered by the CapitalCare plan. The court based its conclusion on a provision in the plan agreement that excludes medical services rendered outside of the plan's service area if the need for those services was reasonably foreseeable. The court found that Jeffrey's need for care was reasonably foreseeable because he was in the end stages of AIDS. In addition, the court determined that CapitalCare substantially complied with ERISA's requirements for notifying beneficiaries of a denial of benefits. Philip appeals the district court's order.
 
 
 3
 For the reasons that follow, we determine that the district court erred by applying the wrong standard of review and by improperly considering evidence that was not before the plan administrator. The administrative record before Appellee at the time of the benefit determination contained insufficient evidence to allow the district court to adequately review the denial of benefits. Accordingly, we vacate the district court's ruling and remand with instructions to remand the case to the plan administrator for reconsideration of this matter in light of the complete evidentiary record. Because Appellant will thus have an opportunity for a full and fair administrative review, we do not address his assertion that CapitalCare's denial letter failed to substantially comply with ERISA's notification requirements.
 
 I.
 
 4
 Jeffrey Bernstein was diagnosed as HIV positive in 1986 or 1987. In addition, he had a history of psychological problems and had previously been treated for a manic/depressive condition.
 
 
 5
 Jeffrey lived in the Washington, D.C. area and practiced law there until the fall of 1991, when he retired on disability because of his declining health. After his retirement, he continued his health coverage, which was provided through a group plan sponsored by his former employer and insured by CapitalCare.
 
 
 6
 In February 1992, Jeffrey went to New York to visit friends and to do some fundraising work for a New York theater. While he was in New York, his psychological condition worsened, and his brother Philip involuntarily committed him to the psychiatric facility at the New York Hospital's Westchester Division ("Westchester"), where he was treated for dementia.[1] Jeffrey's condition eventually stabilized, and an MRI scan of his brain performed shortly before his discharge from the hospital showed normal results. He was released from Westchester on March 23, 1992.
 
 
 7
 The hospital formulated a discharge plan for Jeffrey's care upon his release. Under the discharge plan, he was to live in New York with Philip and receive round-the-clock nursing supervision at Philip's home.[2] The discharge plan also provided that he was to receive follow-up medical treatment from Dr. Jonathan Jacobs, an AIDS specialist in New York, and receive follow-up psychiatric treatment to be arranged through Dr. Jacobs. Philip stated in an affidavit that Jeffrey's arrangements for living and receiving medical treatment in New York were temporary and that Jeffrey intended eventually to return to his home in Washington, D.C. J.A. at 187-88.
 
 
 8
 After Jeffrey was released from Westchester, he began to implement the discharge plan. He moved in with Philip and began to receive 24-hour nursing care in Philip's apartment. He saw Dr. Jacobs on March 31, 1992 and arranged to have return visits on an outpatient basis every six weeks. And he began to see New York psychiatrist Dr. David Pelino on an outpatient basis.[3]
 
 
 9
 In late April 1992, Jeffrey went with Philip and Philip's former girlfriend, Claire Campbell, to Washington, D.C. for a short visit. While there, Jeffrey checked on his personal belongings in his condominium, reviewed his mail, took care of some everyday errands, such as picking up his dry cleaning and buying groceries, and went to dinner with some of his friends. Jeffrey returned with Philip and Claire to New York two or three days later.
 
 
 10
 On May 6, 1992, Philip took Jeffrey to the emergency room at the New York Hospital's Cornell Medical Center because, according to Philip, Jeffrey had begun to exhibit new, stroke-like symptoms. Jeffrey was admitted to the hospital the next day. He was initially treated for toxoplasmosis, but when he did not respond to the treatment, the doctors pursued other possible indicators. He was eventually diagnosed with CNS lymphoma, a form of brain cancer.
 
 
 11
 On May 8, 1992, the day after Jeffrey's admission to the hospital, Philip contacted CapitalCare to notify it of Jeffrey's hospitalization. CapitalCare sent Jeffrey a letter on May 13, 1992 informing him that it would not provide benefits for his hospitalization, because under the HMO agreement "benefits are not provided for members living outside the Washington, DC service area when 'the need for care could have been foreseen.' " J.A. at 364.
 
 
 12
 As Appellee explains, HMOs are not indemnity insurers; rather, they are managed care organizations which provide comprehensive health care to their members through a network of selected providers. Under an HMO, members' benefits are generally limited to a particular service area and to those providers who are under contract with the HMO. Exceptions are usually made for emergency care received outside of the service area, provided certain conditions are met.
 
 
 13
 The CapitalCare Group Enrollment Agreement ("the Agreement") contains provisions for "out-of-area coverage," which apply "[i]f a Member requires care while traveling or temporarily residing outside the Service Area [the Washington, D.C. metropolitan area]." J.A. at 19. The Agreement provides as follows:
 
 
 14
 When a Member receives care outside the Service Area, the following requirements must be met in order to receive benefits.
 
 
 15
 1. Need for Care. Benefits will be paid or provided for expenses incurred for treatment of an illness or injury only if CapitalCare determines that:
 
 
 16
 a. The need for care could not reasonably have been foreseen before departing the Service Area or sufficiently in advance so as to permit the Member to return to the Service Area for the care before it became urgent.
 
 
 17
 b. The care was urgently required.
 
 
 18
 c. The Member could not without medically harmful results return to the Service Area to receive treatment from Plan Physicians and Plan Providers.
 
 
 19
 d. The travel was for some purpose other than the receipt of medical treatment.
 
 
 20
 e. The services were medically necessary, in the opinion of CapitalCare.
 
 
 21
 f. The charges were reasonable and do not exceed the amount normally charged by the provider for similar services or supplies and ordinarily charged by most providers of comparable services and supplies in the locality where the services or supplies were received.
 
 
 22
 J.A. at 19 (emphasis added). In addition, the Agreement contains the following exclusion: "Benefits will not be provided ... [i]f the Member could have foreseen the need for care before it became urgent (for example, full-term delivery outside the Service Area or periodic chemotherapy or dialysis treatment)." J.A. at 20 (emphasis added). CapitalCare based its denial of benefits to Jeffrey on these provisions.
 
 
 23
 Philip, who is also a lawyer, responded to CapitalCare's denial letter by sending the HMO a letter on May 31, 1992 providing detailed information in support of coverage under the Agreement's out-of-area coverage provisions. Although CapitalCare asserts that it reviewed Jeffrey's claim in light of the information provided by Philip, it did not send any further correspondence to Philip confirming its denial of coverage.
 
 
 24
 In the meanwhile, Philip continued to discuss with CapitalCare any possible options for Jeffrey's medical care that would be within the HMO's service area and would therefore be covered by the plan. On July 8, 1992, CapitalCare approved a facility in Virginia where Jeffrey could receive treatment under his HMO benefits. Jeffrey was transferred to the Virginia facility on July 9, 1992, but he died the next day.
 
 
 25
 Philip filed this declaratory judgment action on May 12, 1994 in the United States District Court for the Eastern District of Virginia seeking a determination that the expenses for Jeffrey's medical care from May 6, 1992 to July 8, 1992 were covered by the CapitalCare plan. Both parties filed motions for summary judgment, which the district court heard on October 14, 1994. The district court found that Jeffrey's hospitalization in New York was not covered by the plan. The court determined that Jeffrey's need for care was reasonably foreseeable because he was in the end stages of AIDS; thus, the court ruled that his medical expenses were excluded by the Agreement's out-of-area provisions. In addition, the district court found that CapitalCare's denial letter substantially complied with ERISA's notification requirements for informing plan beneficiaries of a denial of benefits. Accordingly, the district court entered judgment in favor of CapitalCare and against Philip.
 
 
 26
 Philip filed a timely notice of appeal on October 21, 1994. He asserts that the district court erred in concluding that Jeffrey's need for care was reasonably foreseeable within the meaning of the CapitalCare HMO Agreement. Also, Philip contends that the district court erred in determining that CapitalCare substantially complied with the procedural requirements of ERISA Sec. 503, 29 U.S.C. Sec. 1133, in providing written notice of the benefit denial and affording a reasonable opportunity for a full and fair review of his claim.
 
 II.
 
 27
 In Sheppard & Enoch Pratt Hosp. v. Travelers Ins. Co., 32 F.3d 120, 123 (4th Cir.1994), a recent decision regarding health benefits under ERISA, this court stated, "In considering a grant of summary judgment, we, of course, review the district court's decision de novo, employing the same standards applied by the district court." In examining the propriety of the district court's ruling in this case, we must first analyze two threshold matters: (1) the appropriate standard for the district court's review of the plan administrator's denial of benefits; and (2) the appropriate scope of evidence that may be reviewed in determining whether the plan administrator's decision was proper. These issues are somewhat intertwined and set the context for reviewing the district court's ruling below.
 
 
 28
 In Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115, 109 S.Ct. 948, 956-57, 103 L.Ed.2d 80 (1989), the United States Supreme Court held that "a denial of benefits challenged under [29 U.S.C.] Sec. 1132(a)(1)(B) is to be reviewed under a de novo standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." If the administrator or fiduciary is given discretionary powers under the plan, his decisions are reviewed for abuse of discretion and will not be disturbed if they are reasonable.[4] Bruch, 489 U.S. at 111, 115, 109 S.Ct. at 954, 956; Doe v. Group Hospitalization & Medical Services, 3 F.3d 80, 85 (4th Cir.1993). Furthermore, when an administrator or fiduciary with discretion is operating under a conflict of interest such that its decision to award or deny benefits impacts its own financial interests, "that conflict must be weighed as a 'facto[r] in determining whether there is an abuse of discretion.' " Bruch, 489 U.S. at 115, 109 S.Ct. at 957 (quoting Restatement (Second) of Trusts Sec. 187, cmt. d (1959)); see also Doe, 3 F.3d at 87 (holding that when a conflict of interest exists, "the fiduciary decision will be entitled to some deference, but this deference will be lessened to the degree necessary to neutralize any untoward influence resulting from the conflict").
 
 
 29
 Appellant contends that the district court failed to apply the correct standard of review in examining CapitalCare's denial of benefits in this action. He suggests that under Doe the district court should have reviewed CapitalCare's decision under a lessened deferential standard because CapitalCare both insured and administered the plan and was thus operating under a conflict of interest. Both parties in this case agree that the HMO Agreement gives to CapitalCare, as the plan administrator, discretion to make eligibility determinations so as to trigger an abuse of discretion standard. For example, the Agreement provides, "CapitalCare may adopt reasonable policies, procedures, rules and interpretations to promote the orderly and efficient administration of this agreement." J.A. at 81 (emphasis added). In addition, the out-of-area coverage provisions of the Agreement state that benefits will be paid "only if CapitalCare determines " that certain conditions are met. J.A. at 86 (emphasis added). It is also uncontroverted that CapitalCare operates under a conflict of interest when it makes benefit determinations, because it both administers the plan and pays for benefits received by its members. In other words, if CapitalCare denies health benefits to its members, it generally profits by the amount of expenses avoided. Accordingly, the appropriate standard of review for the district court to examine CapitalCare's denial of benefits is the modified abuse of discretion standard of Doe, supra: The district court should uphold the plan administrator's decision if the decision was reasonable; and the court should weigh the conflict of interest as a factor in analyzing the reasonableness of the decision. 3 F.3d at 85, 87. Under the abuse of discretion standard, the plan administrator's decision is reasonable "if it is the result of a deliberate, principled reasoning process and if it is supported by substantial evidence." Baker v. United Mine Workers of Am. Health & Retirement Funds, 929 F.2d 1140, 1144 (6th Cir.1991).
 
 
 30
 Although CapitalCare agrees that Doe 's modified abuse of discretion standard is the proper standard of district court review in this case, it asserts that the district court actually reviewed the plan's denial of benefits de novo. According to CapitalCare, the standard of review employed by the district court should not be an issue on appeal because the de novo standard is more favorable to Appellant than the standard of review he advocates. This argument is not persuasive here.
 
 
 31
 Determining the appropriate standard of review of the plan administrator's decision is important because, among other reasons, it controls whether the district court may consider evidence that was not presented to the plan administrator. In Sheppard & Enoch Pratt Hosp. v. Travelers Ins. Co., supra, this court held that when a district court reviews a plan administrator's decision under a deferential standard, the district court is limited to the evidence that was before the plan administrator at the time of the decision.[5] 32 F.3d at 125. The Sheppard opinion reaffirmed this court's pre- Bruch decision of Berry v. Ciba-Geigy Corp., 761 F.2d 1003 (4th Cir.1985), in which we stated, "If the [district] court believed the administrator lacked adequate evidence, the proper course was to 'remand to the trustees for a new determination,' not to bring additional evidence before the district court." Id. at 1007 (citations omitted).[6] In Berry, we expressed our concern that the administration of benefit and pension plans should be the function of the designated fiduciaries, not the federal courts. We also emphasized the importance of promoting internal resolution of claims and encouraging informal and non-adversarial proceedings under ERISA. Id. at 1007 & n. 4.
 
 
 32
 With the foregoing principles in mind, the initial issue in this appeal is whether the administrative record before CapitalCare at the time of the benefit determination contained sufficient evidence to allow the district court adequately to assess the reasonableness of the plan's decision. This threshold inquiry ensures the plan beneficiary that he or she receives procedural fairness under the plan and that the plan administrator's decisions are principled and deliberate. If the district court is to conduct meaningful appellate review of a benefit determination, even under a deferential standard, the administrative record must document the decision-making process. If the evidence before the plan administrator is inadequate, the district court should remand the case to the administrator to receive additional evidence and to make a new determination. Sheppard, 32 F.3d at 125.
 
 
 33
 The administrative record before CapitalCare at the time it denied benefits for Jeffrey's hospitalization fails to adequately document the administrator's decisional process. Indeed, CapitalCare's administrative record contained very little evidence at all. When CapitalCare made its initial denial on May 13, 1992, only five days after Philip informed it of Jeffrey's hospitalization, its administrative record contained only four documents in addition to the denial letter itself: (1) a phone log of calls from late March 1992 relating to Philip's requests for information on converting Jeffrey's coverage to New York; (2) a phone log reflecting Philip's call of May 8, 1992 informing CapitalCare of Jeffrey's hospitalization; (3) a memo from a CapitalCare employee relating to Jeffrey's admission to Westchester in February 1992; and (4) notes by a CapitalCare employee relating to Jeffrey's psychiatric condition at Westchester and the availability of benefits for his care after his discharge from Westchester. These documents provide little support for CapitalCare's initial determination that Jeffrey's need for care was reasonably foreseeable. Furthermore, no one at CapitalCare had spoken to Jeffrey's physicians in New York to ascertain the complete circumstances of his hospitalization. CapitalCare contends that it treated Philip's letter of May 31, 1992 as an appeal and reviewed the claim after receiving Jeffrey's complete medical records from New York; however, the administrative record contains no documentation of CapitalCare's internal review process. Appellee did not send a second denial letter to Philip after his claim was allegedly reviewed.
 
 
 34
 In ruling in favor of Appellee, the district court made the following findings:
 
 
 35
 Under the specific facts of this case which are basically not in any real dispute and that is that [Jeffrey] Bernstein was suffering from end stage AIDS, that he had been recently admitted to a hospital in New York, that he had been out less than eight weeks, given the medical evidence in the record that's really not disputed in terms of the instructions from the first hospital in terms of the need for Mr. Bernstein to have very carefully monitored care, I think in this case it was reasonably foreseeable that he would need acute medical attention.
 
 
 36
 I don't think the issue is really whether you have to know it's for a specific illness. I think under these facts that summary judgment can be granted and is going to be granted on behalf of the--in [CapitalCare's] favor on this issue.
 
 
 37
 J.A. at 74-74. The district court apparently reviewed the evidence de novo and made its own finding as to foreseeability. However, the district court's broad generalization about AIDS was not supported by CapitalCare's administrative record.
 
 
 38
 Whether Jeffrey's need for care was reasonably foreseeable is a factual determination that must be supported by competent medical evidence. See O'Connor v. Central Virginia U.F.C.W., 945 F.2d 799, 802 (4th Cir.1991) ("Deference must be accorded the determinations of the trustees with respect to the nature and level of care required so long as those determinations are supported by substantial medical evidence rendered by qualified medical personnel."). Amici curiae argue that persons with AIDS undergo widely divergent courses of the disease from the point they are diagnosed with AIDS until they die and whether a person can reasonably foresee the need for a particular type of medical care is an inquiry that is unique to each person and must be addressed on a case-by-case basis. Certainly, one may presume that at some point in the progression of an AIDS patient's disease, the need for hospitalization or acute medical care, because of some AIDS-related complication, would become foreseeable, because AIDS destroys the patient's immune system and presently there is no known cure. In addition, the foreseeability of a particular illness depends on myriad factors, such as the patient's age, the severity of the disease, and prior history with the particular illness. Such complex medical determinations are peculiarly within the ken of medical professionals, not federal judges. Under a deferential standard of review, the district court's role is limited to determining whether those findings are supported by substantial evidence.
 
 
 39
 CapitalCare has conceded that it bears the burden of proving that Jeffrey's need for medical care was reasonably foreseeable so as to exclude his New York hospitalization from the plan's coverage. However, the administrative record does not contain sufficient medical evidence to support its denial of benefits. Appellee has admitted that the only physician who participated in the coverage determination was its medical director, who is board certified in pediatrics and has no specialized training in AIDS. J.A. at 345-36. In addition, as Appellant asserts, the administrative record does not include evidence, such as the deposition testimony of Drs. Jacobs and Ross, that was developed only after the final denial of benefits. A plan administrator cannot introduce evidence post hoc to support its benefit determination when the district court reviews that decision under a deferential standard. Halpin v. W.W. Grainger, Inc., 962 F.2d 685, 697 (7th Cir.1992); Berry, 761 F.2d at 1007.
 
 
 40
 We conclude that the administrative record before CapitalCare at the time it denied benefits for Jeffrey Bernstein's hospitalization was inadequate to allow the district court to conduct a meaningful review of the decision. During discovery in this lawsuit before the district court, much relevant additional evidence has been developed, and the remaining issues have been narrowed. However, the benefit determination should first be made by the plan administrator. Berry, 761 F.2d at 1007. Accordingly, we must vacate the district court's ruling and remand with instructions to remand the case to the CapitalCare plan administrator to review the evidence that has been developed since the original denial, to receive additional evidence, and to make a new determination. See Sheppard, 32 F.3d at 125.
 
 III.
 
 41
 Appellant next asserts that the district court erred in finding that CapitalCare's denial letter of May 13, 1992 constitutes substantial compliance with ERISA's requirements for notifying a plan participant of a denial of benefits. In Sheppard & Enoch Pratt Hosp. v. Travelers Ins. Co., supra, we held that substantial compliance with the applicable ERISA regulations is sufficient. 32 F.3d at 127. We need not address the issue of substantial compliance here, because, as discussed above, we have already determined that this action should be remanded for full and fair review of all the evidence.
 
 IV.
 
 42
 For the foregoing reasons, the district court's ruling is hereby vacated, and the case is remanded for further proceedings consistent with this opinion.
 
 
 43
 VACATED AND REMANDED WITH INSTRUCTIONS.
 
 
 
 [1]
 CapitalCare paid for Jeffrey's hospitalization at Westchester
 
 
 [2]
 The discharge summary in Jeffrey's medical records indicates that the 24-hour nursing supervision was recommended not as acute care, but rather to prevent Jeffrey from injuring himself. Jeffrey apparently suffered some AIDS-related impairment in his motor skills and occasionally tripped over his left foot. In addition, his infection affected his mental functions, and he would occasionally exercise poor judgment or get confused, and could get lost easily. J.A. at 125-26
 
 
 [3]
 Philip does not seek coverage from CapitalCare for the costs of Jeffrey's 24-hour nursing care or routine medical services received in New York
 
 
 [4]
 Appellant actually argues that CapitalCare's decision was arbitrary and capricious, not merely an abuse of discretion. Whether there is any significant difference under ERISA between the "arbitrary and capricious" standard and the "abuse of discretion" standard is unclear in this circuit. See Sheppard & Enoch Pratt Hosp. v. Travelers Ins. Co., 32 F.3d at 125 n. 4 ("[W]e believe the result would be the same whether the abuse of discretion standard and the arbitrary and capricious standard are the same or not; therefore, we likewise need not resolve[the] issue [of whether the arbitrary and capricious standard is still viable after Bruch ]."); see also Richards v. United Mine Workers of Am. Health & Retirement Fund, 895 F.2d 133, 135-36 (4th Cir.1990) ("Although the 'abuse of discretion' standard is perhaps broader and less deferential than the 'arbitrary and capricious' standard, 'arbitrary and capricious' definitely is encompassed by 'abuse of discretion.' "). Nevertheless, as we concluded in Sheppard, supra, the difference between the two standards, if any exists, would not be significant here; thus, we too decline to resolve the issue
 
 
 [5]
 In Quesinberry v. Life Ins. Co. of North America, 987 F.2d 1017, 1025 (4th Cir.1993), this court held that a district court has discretion to allow evidence that was not before the plan administrator only when the district court reviews a benefit determination de novo. Moreover, the court cautioned that such evidence should be allowed only in exceptional circumstances when it is clearly established that "additional evidence is necessary to conduct an adequate de novo review of the benefit decision." Id
 
 
 [6]
 We did recognize in Berry, however, that in cases where the fiduciary committed clear error or acted in bad faith, "a reversal, rather than a remand, would be within the discretion of the district court." 761 F.2d at 1007 n. 3