UNPUBLISHED

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

RACHEL T. SMITH, Executrix of the
Estate of Robert W. Smith,
<u>Plaintiffs-Appellants,</u>

v.                                                                                        No. 96-2740

CHAMPION INTERNATIONAL
CORPORATION,
<u>Defendant-Appellee.</u>

Appeal from the United States District Court
for the Western District of Virginia, at Danville.
Jackson L. Kiser, Senior District Judge.
(CA-94-69-D)

Argued: August 12, 1997

Decided: September 25, 1997

Before RUSSELL and HALL, Circuit Judges, and
MICHAEL, Senior United States District Judge for the
Western District of Virginia, sitting by designation.

_____

Reversed and remanded by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** John Bertram Mann, LEVIT & MANN, Richmond, Virginia, for Appellants. Paul Michael Thompson, HUNTON & WILLIAMS, Richmond, Virginia, for Appellee. **ON BRIEF:** Wood W. Lay, HUNTON & WILLIAMS, Richmond, Virginia, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

In February 1984, Champion International Corporation ("Champion") placed employee Robert W. Smith on long-term disability because he suffered from chronic depression. Ten years later, in July 1994, Champion discontinued Smith's disability benefits after it determined that Smith was no longer "totally disabled" as required by Champion's Long Term Disability Plan (the "Plan").**1**

In August 1994, Smith brought suit in district court for restoration of his disability benefits, claiming that Champion unlawfully terminated his benefits in violation of the Employment Retirement Income Security Act**2** ("ERISA"). Nine months later, the district court remanded Smith's case to the Plan Supervisor for a redetermination of eligibility because Champion had violated ERISA procedurally and substantively when denying Smith's claim. Champion's ERISA violations included <u>inter alia</u> its failure to notify Smith of the specific reasons for its termination of benefits; its failure to inform Smith it relied upon surveillance evidence when making its decision; and its failure to obtain an expert opinion disputing the conclusions of Smith's treating physicians that Smith suffered from chronic depression.

Upon remand, Champion hired psychiatrist Merritt Foster to independently examine Smith. It also hired vocational specialist H. Gray Broughton to review Smith's case. Their conclusions favored the denial of benefits.

Dr. Foster examined Smith on June 27 and August 25, 1995, for

_____

**1** To be more precise, Smith received disability benefits under Champion's Long Term Disability Plan for Salaried Employees of Champion International Corporation #506.
**2** 29 U.S.C. § 1001 <u>et seq.</u>

a total of five hours. Dr. Foster's twenty-three page report concluded that Smith was a malingerer and that he has not been "totally and permanently disabled for employment since February 1986." In addition, Dr. Foster believed that Smith's inability to be gainfully employed was volitional and "not the result of an incapacitating emotional or mental state." Mr. Broughton then reviewed Smith's case. Although Mr. Broughton neither personally examined nor interviewed Smith, he concluded that Smith was employable since 1986.

The Plan Administrator then forwarded Smith's file to Travelers Insurance Company ("Travelers"), which was now handling some of Champion's administrative duties. In addition to the reports of Dr. Foster and Mr. Broughton, Travelers primarily relied on the following information when recommending the termination of Smith's benefits: (1) that Smith indicated on a 1992 Personal Profile Evaluation ("PPE") that he did not participate in any social or community activities, despite the fact that he had attended meetings of three local boards from 1986 to 1993 and served as Chairman on two of the boards; (2) that on the same PPE, Smith stated that he did not travel, despite the fact that he had traveled to California and Asia with family members three months prior to completing the PPE; (3) that Champion had videotaped Smith driving a car, attending council meetings, and performing bank transactions; (4) that Smith had been Vice-Mayor of the South Boston City Council until May 1986; (5) that Smith did not require continued hospitalization; and (6) that Smith saw his treating physician only twice a year.

Smith requested that Champion's Employee Benefits Committee (the "Committee") review Travelers' recommendation. The Committee heard Smith's appeal and affirmed the denial of his benefits. After the conclusion of the administrative appeal process, Champion filed a motion for summary judgment in federal court. The district court granted summary judgment in favor of Champion on the basis that Champion's denial of benefits was reasonable and dismissed Smith's claim for restoration of benefits.

Smith appealed the district court's decision. He asserted that the district court committed several procedural errors and applied the wrong standard of review to the Plan Supervisor's decision to deny benefits. Twenty days following the district court's entry of judgment,

3

but before this court heard his appeal, Smith committed suicide. Rachel Smith, executrix of Smith's estate, maintains his appeal. We review de novo a district court's grant of summary judgment.**3**

I.

Smith contends that the district court applied the wrong standard of review when examining the Plan Supervisor's decision to deny benefits. Smith asserts that the district court should not have reviewed the decision for abuse of discretion because the Plan Supervisor had a conflict of interest in the claims review process. When determining which standard of review to apply, the district court must first turn to the language of the plan.**4** If the plan states that the administrator is empowered to construe uncertain terms or that the administrator's eligibility determinations are to be given deference, then the abuse of discretion standard is appropriate.**5**

The abuse of discretion standard is inappropriate, however, when a fiduciary or an administrator is operating under a conflict of interest. When a conflict of interest exists, the district court must weigh the conflict "as a factor in finding whether the fiduciary or plan administrator abused its discretion."**6** Accordingly, we held in Doe v. Group Hospitalization & Medical Services**7** that, in cases involving a conflict of interest, the district court should review the fiduciary's decision with some deference, but it must reduce its deference "to the degree necessary to neutralize any untoward influence resulting from the conflict."**8** This standard of review is the "modified abuse of discretion standard."**9**

In the instant case, the Plan is a self-funded disability plan whose benefits are paid from Champion's general assets. The Plan confers

_____

**3 Nguyen v. CNA Corp.**, 44 F.3d 234, 236 (4th Cir. 1995).
**4 Firestone Tire & Rubber Co. v. Bruch**, 489 U.S. 101 (1989).
**5 Id.** at 111-112.
**6 Id.** at 115 (internal quotations omitted).
**7** 3 F.3d 80, 87 (4th Cir. 1993).
**8 Id.**
**9 Bernstein v. CapitalCare, Inc.** , 70 F.3d 783 (4th Cir. 1995).

the Plan Supervisor with the discretion to determine an employee's eligibility to receive benefits and to determine the amount and kind of benefits payable to the employee. Additionally, in the event there exists a difference of opinion as to whether an employee qualifies as having a "total disability," the Plan Supervisor's decision is final. Thus, Champion argues that the traditional abuse of discretion standard was appropriate.

Three factors, however, weigh heavily in our finding a conflict of interest, which subsequently necessitate changing the review standard. One, Champion directly appoints and compensates the members of its Committee and the Plan Supervisor, and each appointee is a Champion employee. Two, Champion administers the plan itself; it does not pay a premium to any insurer to fund benefits paid out to the plan beneficiaries. Third, the plan is not fully funded. Thus, any denial of benefits is a savings, which accrues to the direct benefit of Champion and other plan participants. Contrary to the district court's finding, therefore, the Plan Supervisor and the Committee unquestionably labored under a conflict of interest arising from their dual roles as plan administrators and employees of Champion. Accordingly, the district court should have reviewed the Plan Administrator's denial of benefits under the modified abuse of discretion standard.

Using the traditional abuse of discretion standard, the district court determined that the Plan Supervisor's decision was reasonable and supported by the record. In arriving at this conclusion, the district court was persuaded by the information relied upon by Travelers, e.g. the reports of Dr. Foster and Broughton, Smith's misrepresentations on the PPE, and that Smith had traveled and served on community boards. But under the modified abuse of discretion standard, this evidence fails to sufficiently controvert the twelve years of medical observation, testing, and treatment administered by Smith's treating physicians, who repeatedly concluded that Smith suffered from severe and chronic depression from 1984 until his suicide in November 1996.

Evidence before the Plan Supervisor substantiating Smith's total disability included reports from physicians Wilson, Floyd and Rozear, and psychologist Stewart. Dr. Wilson regularly treated Smith from 1983 until 1996 and submitted reports to Champion twice a year. He

5

consistently diagnosed Smith as totally disabled due to chronic depression. His treatment over the years included: hospitalizing Smith on several occasions for suicidal ideations; administering prescriptive anti-depressants and electric convulsive treatments; and subjecting Smith to psycho and cognitive therapy. In response to Traveler's conclusion that Smith was not under the "regular care" of a physician, Dr. Wilson stressed that after eight years of treatment, he only saw Smith every three to six months because social security considers this adequate follow-up for chronically depressed patients. Additionally, in response to Traveler's conclusion that Smith could not have suffered from depression since 1986 because Smith participated on community boards and was able to perform minimal daily activities, Dr. Wilson stated that as part of Smith's rehabilitative therapy he encouraged Smith to get out and interact with individuals outside of his immediate family. Dr. Floyd treated Smith in 1989 at Duke University Medical Center, and he concluded that Smith suffered from hypertension, hypertensive heart disease, and chronic depression. Dr. Rozear, a neurologist also at Duke, tested Smith on two occasions to determine whether or not Smith's memory loss and decline in mental ability was neurologically based. His evaluations concluded that Smith suffered from severe depression and psychotic thinking. Finally, Dr. Wilson hospitalized Smith at Charter Hospital in 1993 for suicidal ideations and severe depression. While at Charter, Mr. Stewart subjected Smith to a battery of psychological tests, which led Stewart to conclude that Smith suffered from a major affective depressive disorder and that Smith possessed few intellectual and emotional resources which enabled him to manage daily stress.

II.

Given the evident conflict of interest and the overwhelming objective evidence substantiating Smith's total disability since 1986, we hold that the district court erred in awarding summary judgment to Champion. Hence, in the interest of justice, we reverse the lower court's decision and remand the case to the district court to reinstate Smith's disability benefits in accordance with this opinion.

REVERSED AND REMANDED

6