WILLIAMS, Circuit Judge,
dissenting.
In this case, our sole duty is to determine whether the Trustees’ decision to deny Harris benefits was an abuse of discretion. Whether the Trustees abused their discretion turns, in this case, on whether their determination that Harris’s disability was not caused by a mine injury was supported by substantial evidence. Because I conclude that the Trustees’ decision was supported by substantial evidence, and because I believe that my colleagues in the majority apply the now-discredited treating physician rule, I respectfully dissent.
I.
I essentially agree with the majority’s recitation of the facts, so I will recount only those facts that I believe that my colleagues omit or de-emphasize. Harris unquestionably injured his back in a mine accident in September of 1987. As the majority notes, he received various treatments for the back injury during the four months following the accident, and in the course of those treatments, he was diagnosed with degenerative disc disease, a form of osteoarthritis.[1] By November, Harris was “quite a bit better” and “anx *861 ions to return to work.” (J.A. at 220.) He suffered a relapse, however, which his physician attributed to “a flare of his degenerative disc disease.” (J.A. at 221.) He then underwent a bone scan, because his physician was concerned about the possibility of “arthritic change.” (J.A. at 223.) The bone scan confirmed the earlier diagnosis of osteoarthritis. After January of 1988, Harris received no additional medical treatment for his back for nearly nine years. During this time, he continued to be actively employed as a miner.
During the 1990’s, Harris was involved in two other minor mine accidents. In February of 1995, Harris ran into a brow and “stove [his] neck.” (J.A. at 43.) He required no medical treatment after this accident and remained on the job until the end of his shift. In November of 1996, Harris injured his back while attempting to lift the end of a monorail. The injury occurred at 1:50 A.M., and Harris continued working until the end of his shift. He did not seek medical attention until 11:30 A.M., over nine hours after the accident, at which time he was diagnosed with a lumbar strain.
Despite these accidents, Harris continued to work as a miner until he was laid off in February of 1997. He sought no medical treatment for his back between the time he was laid off and June 16, 1997, when he severely injured his back on June 16, 1997, while mowing his lawn. After the lawn-mowing accident, Harris’s range of motion in his legs and back was greatly decreased, and he was in substantial pain. He was subsequently treated for muscle spasms and acute sciatica.[2] He was once again diagnosed with degenerative osteoarthritis in August 1997. His treating physician, Dr. Sutherland, opined that Harris was “totally disable[d] ... due to lumbar disc syndrome from 6-19-97.” (J.A. at 261.) In September, Sutherland diagnosed Harris with “advanced degenerative joint disease,” “lumbar disc syndrome,” “bilateral sciatica,” and “chronic pain disorder.” (J.A. at 262.)
Harris applied for an award of Social Security Disability Insurance Benefits (SSDI) in August 1997. An administrative law judge (ALJ) determined that Harris was totally disabled and thus qualified for SSDI. The ALJ attributed Harris’s disability to “residuals of traumatic low back injury with radiculopathy[3] in the lower extremities; arthritis in the neck, arms, and hands; and situational depression.” (J.A. at 147.) Notably, the ALJ determined that Harris had been disabled since June 21, 1997, a few days after Harris’s lawn-mowing accident.
Harris then applied to the Trustees for a disability pension. The Trustees denied Harris’s application. They concluded that to the extent Harris’s disability was attributable to “traumatic low back injury,” “the disability ... [wa]s related to the non-work-related [i.e., lawn-mowing] injury of June 1997.” (J.A. at 32.) They concluded that “the records d[id] not support [Dr. Sutherland’s] conclusion” that there was a “direct relationship between the 1987 injury and the disability of June 21, 1997.” (J.A. at 32.) Specifically, the Trustees determined that, given Harris’s “work history and lack of evidence of [ongoing] back *862 problem[s],” it “would not be reasonable to infer” that Harris’s disability was related to the “back injuries of 1987 and 1996” as opposed to the back injury of 1997. (J.A. at 32.)
II.
A.
When an ERISA disability pension plan commits eligibility determinations to the discretion of the plan administrator or fiduciary, we review those determinations for abuse of discretion. Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989). “It is well-established that the abuse of discretion standard under [Firestone] is applicable to our review of the Trustees’ decisions under the UMWA pension plans.” Hale v. Tr. of United Mine Workers Health & Retirement Funds, 23 F.3d 899, 901 (4th Cir.1994). Under this standard, “we will not disturb such a decision if it is reasonable.” Booth v. Wal-Mart Stores, Inc. Associates Health and Welfare Plan, 201 F.3d 335, 342 (4th Cir.2000).
Although we may consider many factors in determining the reasonableness of a fiduciary’s discretionary decision, see Booth, 201 F.3d at 342-343; Brogan v. Holland, 105 F.3d 158, 161 (4th Cir.1997); Lockhart v. United Mine Workers of Am.1974 Pension Trust, 5 F.3d 74, 77 (4th Cir.1993), the only factor at issue here is the degree to which the considered materials support the Trustees’ decision. See Booth, 201 F.3d at 342. In other words, given the facts of this case, the Trustees’ decision is reasonable if it is supported by substantial evidence. See Bernstein v. CapitalCare, Inc., 70 F.3d 783, 788 (4th Cir.1995).
B.
In order to be eligible for a disability pension under the 1974 UMWA pension plan, a claimant must establish three things. See Boyd v. Tr. of United Mine Workers Health & Retirement Funds, 873 F.2d 57, 59 (4th Cir.1989). First, the claimant must establish that he was involved in a mine accident. Id. Second, he must show that he has been awarded SSDI disability benefits, thus conclusively establishing that he has a disability (“Qualifying Disability”). Id. at 58. Finally, he must prove that the mine accident proximately caused, or was substantially responsible for, the Qualifying Disability. Id. at 59; Robertson v. Connors, 848 F.2d 472, 475 (4th Cir.1988).
As my colleagues note, the Trustees use a set of questions and answers, called “Q & As,” to help them interpret the terms of the 1974 pension plan. See Brogan, 105 F.3d at 162. We “afford the Trustees’ interpretation of these rules the same deference that we give the Trustees’ interpretation of the language of the Plan itself.” Id. According to Q & A 252, “miners who become' disabled by progressive diseases or conditions such as black lung, silicosis, tuberculosis, arthritis, rheumatism, etc., cannot be considered ‘disabled as the result of a mine accident.’ ” Q & A 252; (Supp. J.A. at 2.). When a progressive disease combines with a mine accident to proximately cause a claimant’s Qualifying Disability, however, the claimant is eligible for a disability pension. See Richards, 895 F.2d at 136-137. (explaining that Q & A 252(k) requires benefits when a mine worker “suffers a heart attack while pushing a heavy object in the normal course of his job”); Chicarelli v. UMWA Health & Ret. Funds, 943 F.2d 457, 462 (4th Cir. 1991) (same).
In determining whether the Trustees’ decision is reasonable, we accord great weight to the disability date specified in an SSDI award when ascertaining the date and cause of a Qualifying Disability. Rich *863 ards, 895 F.2d at 138; Horn v. Mullins, 650 F.2d 35, 37 (4th Cir.1981). In fact, we have described the “date of disability determined by the ALJ” as the “critical factor” to be considered when deciding whether substantial evidence supports the Trustees’ decision. Horn, 650 F.2d at 37. This “critical factor” clearly supports the Trustees’ decision in this case. The ALJ found the date of disability to be June 21, 1997, within four days of the lawn-mowing accident, but almost ten years after the mine accident. Moreover, in addition to bring consistent with the ALJ’s determination, the Trustees’ conclusion is supported by the following undisputed facts:
• Harris continued to work following each of his three mine accidents until he was laid off in 1997;
• Harris had been diagnosed with a progressive disease, osteoarthritis of the spine, several times since 1987;
• Harris continued working in the mines for nearly ten years after his first, and most severe, mine accident;
• After treatment for the 1987 mine accident ended in January 1988, and pri- or to his lawn-mowing accident, Harris sought medical treatment for back pain on only one day, the day of the 1996 mine accident;
• Dr. Sutherland, Harris’s treating physician, opined that Harris was “totally disable[d] ... from 6-19-97,” three days after the lawn-mowing accident (J.A. at 260-61);
• The ALJ attributed Harris’s disability to a combination of arthritis, lower back trauma, and depression;
• Dr. Sutherland, the only doctor to opine that the 1987 mine accident caused Harris’s disability, did not first evaluate Harris until nearly ten years after the accident;
• Harris has required extensive, continuing medical treatment since the lawn-mowing accident, but he did not require such treatment before the accident; and
• Harris has been unable to work since the lawn-mowing accident, but he was able to work before the accident.
In the face of this evidence, substantial evidence supported the Trustees’ decision, and it was reasonable for the Trastees to conclude that Harris’s disability was caused by a combination of his osteoarthritis and the lawn-mowing accident, not a mine accident.[4] Instead of noting the abundance of evidence supporting the Trustees’ determination, the majority engages in a de novo fact-finding expedition and determines that the 1987 mine accident substantially caused Harris’s disability.[5] Even if we were reviewing the *864 Trustees’ decision de novo, however, the evidence relied upon by the majority would provide slim support for its conclusion.
First, the majority quotes with approval the district court’s finding that “clearly the first back injury in 1987 was a continuous problem until a final exam by Doctors in 1998.” Ante at 858. To the contrary, I believe that it is anything but “clear” that Harris had a continuous problem with his back following the 1987 injury. Harris sought absolutely no medical treatment for his back during the nine years after the accident, and he continued his employment in the mines during the same period. In my mind, this hardly evidences a “continuous problem.”
Next, the majority again quotes with approval the district court’s finding that “the first Doctor who saw [Harris] found that he had ... a disc problem at L-5/S-1 and the last Doctor who treated [Harris] found he had a disc problem at L-5/S-1.” Ante at 858. While this statement is true, the majority fails to note that the “disc problem” found by the doctors was degenerative osteoarthritis, a progressive disease that can never be caused by a mine accident. I fail to understand how the fact that Harris had osteoarthritis at L-5/S-1 in 1987 and continued to have it in 1998 is at all relevant. Because osteoarthritis is a progressive disease, one. would expect Harris’s osteoarthritis to have worsened during the time period between 1987 and 1998, which it in fact did. A doctor’s finding that Harris had osteoarthritis at L-5/S-l in 1998 is thus quite unextraordinary and does not increase the likelihood that Harris’s disability was caused by the 1987 mine accident. Furthermore, because degenerative osteoarthritis is a progressive disease that cannot be caused by a mine accident, it is unclear how these findings support the majority’s analysis.
My colleagues also believe that “[i]t is ... illogical to conclude that Harris’s 1987 traumatic low back injury ... was not a proximate cause of his permanent disability,” because “the ALJ concluded that Harris was permanently disabled as a result of a ‘traumatic’ ... low back injury.” Ante at 858. The majority fails to explain why it is logical to assume that the trauma to which the ALJ referred was a ten-year-old mine accident, for which Harris had not sought medical treatment in almost a decade, rather than the lawn-mowing injury that occurred just days before Harris became totally disabled. Indeed, I believe that the only reasonable conclusion to draw from the date of disability specified in the SSDI award, is that the “trauma” to which it refers is the lawn-mowing accident.
*865 The final arrow in my colleagues’ quiver is Dr. Sutherland’s letter, in which he opined that “Mr. Harris’s ... disability is directly related to the injury of 1987.” (J.A. at 287.) The majority avers that the Trustees “ignore[d] the essentials of ... Dr. Sutherland^] Letter.” Ante at 859. This statement is belied by the record. The analyst specifically considered and rejected Dr. Sutherland’s opinion.[6] More-over, notwithstanding the fact that Dr. Sutherland’s letter supports the majority’s factual conclusion, it is not entitled to nearly the evidentiary weight that my colleagues give it. Black & Decker Disability Plan v. Nord, 538 U.S. 822, 123 S.Ct. 1965, 1972, 155 L.Ed.2d 1034 (2003). (“[C]ourts have no warrant to require administrators automatically to accord special weight to the opinions of a claimant’s physician....”)
The Trustees obviously, and correctly, questioned how Dr. Sutherland was able, in 2000, to conclude that the 1987 mine accident directly caused Harris’s disability in light of the intervening degenerative changes caused by Harris’s osteoarthritis and in light of Harris’s much more recent back injury. The Trustees’ apparent skepticism was undoubtedly reinforced by the fact that Dr. Sutherland never examined Harris in connection with the 1987 mine accident or, indeed, at any time during the nine years after the accident. Moreover, Dr. Sutherland’s letter gave no explanation or reasoning as to how he was able to reach his unlikely conclusion. Nevertheless, resolving this factual dispute is not our task. Given the evidence in their possession, the Trustees were clearly entitled to disagree with Dr. Sutherland’s opinion, id. at 1972, and, while the analyst’s written findings might not be a model of explanatory writing, we may not “impose on plan administrators a discrete burden of explanation when they credit reliable evidence that conflicts with a treating physician’s evaluation.” Id.
In my view, both the district court and my colleagues chose to apply the “treating physician rule,” which the Supreme Court explicitly rejected just last term. Id. at 1972 n. 4 (“ERISA does not support judicial imposition of a treating physician rule, whether labeled ‘procedural’ or ‘substantive.’ ”) The treating physician rule, as it had been developed, embodied both “a ‘procedural’ rule, which require[d] a hearing officer to explain why she rejected the opinions of a treating physician, and a ‘substantive’ rule, which require[d] that ‘more weight’ be given to the medical opinions of a treating physician.” Id. Although the majority opinion explicitly disclaims reliance on the treating physician rule, its holding speaks louder than its disclaimer. See ante at 859 (“Because the Trustees *866 ignored Dr. Sutherland’s opinion, they failed to properly analyze the proximate cause issue.”).
III.
Because the Trustees’ decision that Harris’s disability was not caused by a mine accident was supported by substantial evidence, I would reverse the holding of the district court. In my view, my colleagues rely .on the now-discredited treating physician rule and ignore the abundant evidence supporting the Trastees’ decision. Accordingly, I respectfully dissent.

. Osteoarthritis is "a noninflammatory degenerative joint disease ... characterized by degeneration of the articular cartilage, hypertrophy of bone at the margins, and changes in the synovial membrane.” Dorland's Illustrated Medical Dictionary 1286 (29th ed.2000).

. Sciatica is "a syndrome characterized by pain radiating from the back into the buttock and into the lower extremity.” Dorland’s Illustrated Medical Dictionary 1609 (29th ed.2000). It is "most commonly caused by protrusion of a low lumbar intervertebral disk.” Id.

. Radiculopathy is "a disease of the nerve roots.” Dorland’s Illustrated Medical Dictionary 1511 (29th ed.2000).

. Because my colleagues focus exclusively on the 1987 mine accident, I focus on that accident as well. I wish to note however, that there is absolutely no evidence that the later two mine accidents, neither of which were severe enough to require Harris to leave work, contributed in any way to his disability. Accordingly, substantial evidence supports the Trustees' decision that these minor accidents did not substantially cause Harris's disability.

. The majority relies heavily on our opinions in Robertson and Boyd, holding that the Trustees' decision contravenes the “mandate” of those cases. See Robertson v. Connors, 848 F.2d 472 (4th Cir.1988); Boyd v. Trs. of United Mine Worker's Health & Ret. Funds, 873 F.2d 57 (4th Cir.1989). Although the majority accurately states the facts and holdings of those cases, they fail to explain how those cases are relevant here. The parties did not dispute, nor do I, that a mine accident can substantially cause a Qualifying Disability even if it is not the sole cause of that disability. This rather unremarkable proposition of law, however, does not help us determine whether the Trustees' decision in this case was supported by substantial evidence. Moreover, if my colleagues mean to imply that Boyd and Robertson are factually similar *864 to this case, they simply are mistaken. The majority relegates to a footnote what we have called the "critical factor" in lower back injury cases — in both of those cases, the ALJ determined that the miners had become disabled on or near the date of their mine accidents. See Robertson, 848 F.2d at 475 n. 2 ("Our decision is bolstered by the ALJ's determination that Social Security disability for Robertson’s depressive syndrome commenced on the date of the mine accident.”); Boyd, 873 F.2d at 58 (noting that the ALJ determined that Boyd was disabled since 1983 following her 1982 mine accident). In this case, that same "critical factor” supports the Trustees’ decision — the ALJ determined that Harris became disabled within days of his lawn-mowing accident. Moreover, unlike Harris, both Robertson and Boyd persistently complained of debilitating pain from the date of their mine injuries, and neither was able to return to work for any substantial period of time after his or her mine accident. See Robertson, 848 F.2d at 476 ("Importantly, however, prior to the mine accident, [the mine worker’s] manifestations of pain did not prevent his return to work.”); Boyd, 873 F.2d at 60 (”[F]rom the date of her mine injury in July 1982, Boyd continuously complained of debilitating pain, repeatedly sought medical assistance for this pain, and finally was unable to continue work.”).

. The paragraph in which the Trustees rejected Dr. Sutherland's opinion reads as follows:
The records show Mr. Harris sustained a work-related back injury in September 1987. He had treatment over a four-month period with no evidence of an ongoing problem. There are no treatment records after January 8, 1988.... Mr. Harris worked until he was laid off on February 13, 1997 with no evidence of an ongoing back problem. The work history and lack of evidence of a back problem would indicate that he was not disabled. Therefore, it would not be reasonable to infer that the back injuries of 1987 and 1996 are related to the disability basis of residuals of traumatic low back injury with radiculopathy in the lower extremities. Although Dr. Sutherland drew a direct relationship between the 1987 injury and the disability of June 21, 1997, the records do not support this conclusion. ... [Harris] sustained a back injury in June 1997 when he was mowing the lawn. The records show he had treatment thereafter. The records support a conclusion that the disability basis of residuals of traumatic low back injury with radiculopathy in the lower extremities is related to the non-work-related injury of June 1997.
(J.A. at 32.)