**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 06-2112

In Re:  WILBER BUDDYHIA MARSHALL,

Debtor.

-----------------------

JANET M. MEIBURGER, Trustee; WILBER BUDDYHIA
MARSHALL,

Plaintiffs - Appellants,

versus

THE  BERT  BELL/PETE  ROZELLE  NFL  PLAYER
RETIREMENT PLAN,

Defendant - Appellee.

Appeal from the United States District Court for the Eastern
District of Virginia, at Alexandria.  Gerald Bruce Lee, District
Judge.  (1:06-cv-00075; 02-80496; 04-1020-RGM)

Argued: October 31, 2007          Decided: January 14, 2008

Before MICHAEL, KING, and DUNCAN, Circuit Judges.

Reversed and remanded by unpublished per curiam opinion.

**ARGUED:** William Daniel Sullivan, TIGHE, PATTON, ARMSTRONG &
TEASDALE, P.L.L.C., Washington, D.C., for Appellants.  Lonie Anne
Hassel, GROOM LAW GROUP, CHARTERED, Washington, D.C., for Appellee.

**ON BRIEF:** Janet M. Meiburger, THE MEIBURGER LAW FIRM, P.C., McLean, Virginia, for Appellant Janet M. Meiburger.  Douglas W. Ell, GROOM LAW GROUP, CHARTERED, Washington, D.C., for Appellee.

---

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Wilber B. Marshall, Jr., and his trustee in bankruptcy sued the Bert Bell/Pete Rozelle NFL Player Retirement Plan and the NFL Player Supplemental Disability Plan (together, the Plan) under the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1132(a)(1)(B). Marshall and the trustee sought a determination that (1) the Plan's Retirement Board (the Board) erred in determining the onset date of Marshall's total and permanent disability, and that (2) he was entitled to retroactive benefits for an additional eight-month period. The Board arbitrarily selected the date of a doctor's examination as the onset date. The record, however, contained evidence establishing an earlier onset date, and the bankruptcy court entered judgment in favor of Marshall and the trustee. The district court reversed. Because we conclude that the bankruptcy court's ultimate determination was correct, its judgment will be reinstated.

I.

A.

The Plan provides disability benefits to a vested inactive (or retired) football player who qualifies as "totally and permanently disabled." J.A. 39. According to the terms of the Plan, an applicant for benefits is considered to be totally and permanently disabled if he is "totally disabled to the extent that

3

he is substantially prevented from or substantially unable to engage in any occupation or employment for remuneration or profit." J.A. 41. A benefits recipient may be required to submit to periodic physical examinations for the purpose of reevaluating his condition; if total and permanent disability ends, benefits are terminated. In the event of termination, a beneficiary may reapply for benefits. The Plan provides that benefits are awarded "retroactive to . . . the first of the month following the date of the total and permanent disability," but not more than forty-two months prior to the date the Board receives the application for benefits. J.A. 39.

The Plan is administered by the Board, whose voting membership consists of three representatives of the NFL Management Council and three representatives of the National Football League Players Association (NFLPA). The Plan grants the Board "full and absolute discretion, authority and power" to decide claims for benefits and to interpret the terms of the Plan. J.A. 49-50. If the Board deadlocks on whether a retired player qualifies as totally and permanently disabled, it may by a three-member vote request that the player be examined by a medical advisory physician (MAP), a board-certified orthopedic physician jointly designated by the NFL Management Council and the NFLPA. MAP decisions are final and binding upon the Board.

Marshall played NFL football for twelve seasons, retiring in 1995. As a result of injuries sustained during his playing career, Marshall has degenerative arthritis in both knees, his right elbow, his left shoulder, both ankles, his spine, and his hands. As a vested inactive player under the Plan, he qualifies for disability benefits if he is determined to be totally and permanently disabled.

Marshall first applied for disability benefits in 1997. Based on a finding by neutral physician Dr. Royer Collins on March 6, 1997, that Marshall could do sedentary work, the Board denied the application. Marshall appealed in November of 1997 and was referred to a MAP, Dr. James E. Tibone, who examined Marshall on February 5, 1998, and determined that he was totally and permanently disabled. The Board awarded Marshall benefits retroactive to April 1, 1997. In 1999 Marshall was again examined by Dr. Collins who found that he remained totally and permanently disabled.

In February of 2000 the Board received two unsolicited physicians' reports: one from Dr. Collins, who opined that Marshall was still totally and permanently disabled; and one from Dr. Richard Zipnick, who, in the course of treating Marshall for an unrelated condition, opined that he was capable of doing desk work. The Board consulted Dr. Collins, who then agreed with Dr. Zipnick's

conclusion that Marshall could work. The Board next referred Marshall to a MAP, Dr. Bernard Bach, who reported on September 11, 2000, that Marshall did not meet the criteria for total and permanent disability and that he could work in a sedentary position. At its meeting on April 12, 2001, the Board terminated Marshall's benefits effective April 27, 2001. Marshall's June 5, 2001, appeal to the Board was denied on August 2, 2001.

On November 13, 2001, Marshall reapplied for disability benefits. The Board referred him to a neutral physician, Dr. Walter Doren, who examined him on December 7, 2001. Dr. Doren reported on January 3, 2002, that Marshall was unable to work and that based on a review of Marshall's medical records, his symptoms had remained consistent since his initial evaluation in 1997. The Board then referred Marshall to a MAP, Dr. Alfred Tria, who reported on February 21, 2002, that Marshall was totally and permanently disabled. Based on Dr. Tria's report, the Board renewed Marshall's benefits, to commence on March 1, 2002 (the first of the month after the examination by Dr. Tria). Marshall then sent the Board two letters, the first requesting that the effective date for the benefits be changed to December 2001 and the second requesting that it be changed to February 8, 2002. The Board changed the effective date to January 1, 2002, the first day of the month after Marshall was examined by Dr. Doren.

6

In the meantime, on February 5, 2002, Marshall filed a voluntary petition under chapter 11 of the bankruptcy code. In early 2004 Marshall's bankruptcy trustee initiated an adversary proceeding, filing a complaint (later joined by Marshall) against the Plan. The complaint, brought under ERISA, sought benefits (approximately $72,000) that were denied to Marshall for an eight-month period, May 2001 through December 2001. The parties cross-moved for summary judgment based on the administrative record. After a hearing in the summary judgment proceedings, the bankruptcy court (1) noted that the Plan requires benefits to be awarded retroactively to the first of the month following the onset of disability, and (2) that it was an abuse of discretion in this case for the Board to use the date of Dr. Doren's medical examination as the onset date. The bankruptcy court asked the parties for memoranda on whether the question of the actual onset date should be remanded to the Board or whether the court should decide it, either on the administrative record or by taking additional evidence. In its supplemental memorandum the Plan argued against either a remand to the Board or an evidentiary hearing in bankruptcy court and asked the court to decide the case based on the administrative record. After requesting additional briefing on the merits and considering the record, including Dr. Doren's report concluding that Marshall's symptoms had remained consistent since his first disability award, effective April 1997, the bankruptcy

court determined that Marshall should receive benefits retroactive to May 1, 2001. The court also assessed attorney fees and costs against the Plan.

The Plan appealed this decision to the district court. The district court reversed, concluding that the Board's decision to award benefits retroactive only to January 1, 2002, was supported by substantial evidence and was reasonable. Marshall now appeals the district court's decision to this court.

II.

A.

We review the decision of a district court sitting in review of a bankruptcy court de novo, applying the same standards of review that were applied in the district court; specifically, we review the bankruptcy court's findings of fact for clear error and its conclusions of law de novo. Logan v. JKV Real Estate Servs. (In re Bogdan), 414 F.3d 507, 510 (4th Cir. 2005). In an ERISA case a reviewing court first determines de novo whether a benefits plan confers discretionary authority on the administrator or fiduciary. If it does, the court reviews the decision of the administrator or fiduciary for abuse of discretion. Ellis v. Metropolitan Life Ins. Co., 126 F.3d 228, 232-33 (4th Cir. 1997). Under the abuse of discretion standard, a decision is reasonable if it is the result of a deliberate, principled reasoning process and

8

is supported by substantial evidence. Bernstein v. CapitalCare, Inc., 70 F.3d 783, 788 (4th Cir. 1995). Because the Plan here grants the Board the discretion to decide claims for benefits and to interpret the terms of the Plan, we review the Board's decision for abuse of discretion.

The central question here is whether the Board abused its discretion by using as the disability onset date the date of Dr. Doren's examination (December 7, 2001) that revealed Marshall was totally and permanently disabled. The Plan provides that benefits must be awarded retroactively to the first of the month after the onset of total and permanent disability. The bankruptcy court concluded that the Plan therefore requires the Board to determine when the onset of total and permanent disability occurred and that the Board abused its discretion by not making a reasonable effort to fulfill its duty in this case.

At oral argument counsel for the Plan stated that the Board does not automatically award benefits on the first of the month after the first doctor's report finding total and permanent disability. For example, when the record contains social security disability records or tax returns reflecting that an applicant is unable to work, the Board has awarded benefits retroactively to the time when employment ended. Counsel asserted, however, that in Marshall's case Dr. Doren's December 2001 examination was the

earliest evidence of total and permanent disability in the record after Dr. Bach's September 2000 report that Marshall could work.

We appreciate the difficulty of determining an exact date of total and permanent disability in the case of a degenerative illness, such as Marshall's, where the severity of symptoms may vary from time to time. In some cases the date of a doctor's examination may be the only information available as to the onset date of total and permanent disability, especially when the examining doctor is unable or unwilling to provide an opinion regarding onset. Here, however, the bankruptcy court rejected the Board's arbitrary use of the date of the doctor's examination to reinstate benefits. The bankruptcy court reviewed the record and found sufficient evidence in Dr. Doren's report to indicate that Marshall's total and permanent disability extended back at least to May 1, 2001. Indeed, Dr. Doren's opinion was that Marshall's symptoms had been consistent since 1997. Thus, in Marshall's case the simple date of Dr. Doren's examination was not the only information available to the Board from which to determine an onset date. In that situation the Board's exclusive reliance on the date of the doctor's examination did not result in an onset determination that was "the result of a deliberate, principled reasoning process." See Bernstein, 70 F.3d at 788 (internal

10

quotation marks and citation omitted).* As a result, we agree with the bankruptcy court that the Board abused its discretion in selecting the onset date.

For these reasons, we reverse the order of the district court, which had reversed the bankruptcy court, and remand for reinstatement of the judgment of the bankruptcy court.

REVERSED AND REMANDED

---

*We are not unsympathetic to the Plan's argument that allowing benefits to be paid retroactively to May 1, 2001, would create tension with the "final and binding" decision of Dr. Bach on September 11, 2000, that Marshall was not totally and permanently disabled at that time. We simply conclude here that the Board could not escape this tension by ignoring Dr. Doren's finding on January 3, 2002, that Marshall was totally and permanently disabled and that his symptoms had remained consistent since his initial medical evaluation in 1997.

11