UNPUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

MEI-JONG HUNG,

*Plaintiff-Appellant,*

v.

THE GUARDIAN LIFE INSURANCE
COMPANY OF AMERICA,

*Defendant-Appellee.*

No. 01-1696

Appeal from the United States District Court
for the District of Maryland, at Baltimore.
Frederic N. Smalkin, Chief District Judge.
(CA-99-104-S)

Argued: December 3, 2001

Decided: January 28, 2002

Before WILKINSON, Chief Judge, NIEMEYER, Circuit Judge,
and Joseph R. GOODWIN, United States District Judge for the
Southern District of West Virginia, sitting by designation.

Reversed and remanded by unpublished per curiam opinion.

## COUNSEL

**ARGUED:** Mark John Hardcastle, BLAIR, HARDCASTLE &
ELLIS, P.A., Columbia, Maryland, for Appellant. Bryan David Bol-
ton, FUNK & BOLTON, P.A., Baltimore, Maryland, for Appellee.
**ON BRIEF:** Terry B. Blair, BLAIR, HARDCASTLE & ELLIS, P.A.,
Columbia, Maryland, for Appellant. Eric B. Myers, FUNK & BOL-
TON, P.A., Baltimore, Maryland, for Appellee.

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

---

**OPINION**

PER CURIAM:

When Mrs. Hung's husband died in an accident, she filed a claim under his accidental death policy with Guardian Life Insurance (Guardian). Guardian reviewed the file and denied coverage. Mrs. Hung sought review, and Guardian again denied her claim. On judicial review, the district court granted summary judgment to Guardian. Mrs. Hung appealed that decision to this court. We reversed and remanded, concluding that the plan administrator abused her discretion by failing to submit an adequate record to the reviewing physician. *See Hung v. Guardian Life Ins. Co. of Am.*, 229 F.3d 1142 (4th Cir. 2000) (per curiam) (table decision), No. 99-2117, 2000 U.S. App. LEXIS 18970, at *2. The district court remanded to Guardian, which again denied Mrs. Hung's claim. She appealed to the district court, which again granted summary judgment to Guardian. Mrs. Hung now appeals. For the reasons that follow, we reverse.

I.

Because we discussed the underlying facts in our prior opinion, we address here only those relevant to our present inquiry. *See generally id.* After finding her husband unconscious on the floor, Mrs. Hung says that she told the 911 operator and an attending physician that Dr. Hung had suffered from occasional headaches in the past, which were easily relieved with Ibuprofen. The resultant medical records indicated, however, that he had suffered from headaches in the two to four days before his accident. A CT scan revealed that Dr. Hung had suffered a skull fracture and was bleeding internally. His skull injuries led to a massive stroke, and he died on January 11, 1998.

In investigating Mrs. Hung's accidental death benefits claim, Guardian's doctor, Dr. Dennison, reviewed Dr. Hung's file. She concluded that hypertension caused some of the brain hemorrhages found

on the CT scan; that these caused him to loose consciousness and fall; that the fall fractured his skull; that the fracture caused more intracranial bleeding; and that this bleeding led to the stroke that ultimately killed him. Based on this opinion, Guardian denied Mrs. Hung's accidental death benefits claim.[1]

Mrs. Hung requested that Guardian reconsider its denial and provided Guardian with, among other things, affidavits from herself, her daughter, and two doctors. The Hungs' affidavits included their conclusion that Dr. Hung fell from a ladder in his basement while wearing flip-flop sandals, as well as Mrs. Hung's assertion that she told the 911 operator and an attending physician that her husband had sometimes experienced headaches that were relieved with Ibuprofen. In their affidavits, Drs. Schindler and Mandava averred that hypertension could not have caused any of the brain hemorrhages found on the CT scan.

In considering Mrs. Hung's appeal, Dr. Dennison reviewed the medical file again and the new information submitted by Mrs. Hung. She concluded that Dr. Hung's hypertension was the primary cause of the fall, but recommended that Guardian seek an outside medical review.

Guardian requested that Dr. Schuster, a neuroradiologist, review the medical records. Guardian, however, failed to provide Dr. Schuster with the additional materials submitted by Mrs. Hung. Without these materials, Dr. Schuster concluded that hypertension led to brain hemorrhaging, which in turn caused Dr. Hung to loose consciousness. Dr. Schuster's chain of causation next linked Dr. Hung's fall and consequent skull fracture. He then concluded that the fracture caused more intracranial bleeding and that this bleeding eventually caused a fatal stroke.

On November 30, 1998, Guardian denied Mrs. Hung's appeal based primarily on Dr. Schuster's opinion. Mrs. Hung filed suit in

---

[1]It is undisputed that the accidental death policy did not cover accidents precipitated by an underlying medical condition. The policy provides that "[t]he loss must be the direct result of an accident which occurs while you are insured, Independent (sic) of all other causes."

Maryland state court. Guardian removed the action to federal court under the Employment Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1001 *et seq*. There, the district court concluded that the administrator had not abused her discretion in denying the claim, and granted Guardian's motion for summary judgment. On appeal, we reversed because Guardian principally relied on a medical opinion that was based on incomplete information. *See Hung*, 2000 U.S. App. LEXIS 18970, at \*14. We found that the record contained inadequate information to support Guardian's decision under the modified abuse of discretion standard. We remanded the case to the district court, which in turn remanded the case to Guardian for a new determination based on a complete record, including the information submitted by Mrs. Hung.[2]

Upon review of all materials, Dr. Schuster found a conflict between the affidavits and the medical records as to whether Dr. Hung had been suffering from headaches shortly before the accident. Because of this conflict, Dr. Schuster stated that he could not determine

---

[2]When the case was reopened, Mrs. Hung submitted additional information. Thus, on remand, Dr. Schuster had the following evidence before him in addition to that which Guardian had previously withheld from his consideration:

1. Another affidavit from Mrs. Hung detailing indications of good health (travel plans, high spirits, holiday party attendance, article drafting) and maintaining that she was the sole source of notations in the medical record regarding a history of headaches, and that she never said that her husband had experienced headaches two to four days prior to his fall.

2. An itinerary for the Hungs' planned trip to China, which was to have begun only a few days after the fall.

3. A draft article composed by Dr. Hung a few hours prior to his fall.

4. A Christmas party photograph of Dr. Hung taken shortly before his fall.

5. The report of Dr. Torey C. Brown, an expert retained by Mrs. Hung, concluding that the fall had not been caused by hypertension, and noting that initial mistakes in the patient's history are often repeated in emergency care situations.

whether the findings on the CT taken the day of the fall were due to trauma or an underlying condition. That is, in view of the evidence previously withheld from him — that Dr. Hung may not have suffered headaches just prior to his fall — Dr. Schuster could no longer say that trauma was not the likely cause of the hemorrhages.

Dissatisfied with this result, Guardian asked Dr. Schuster whether his analysis would be different if he assumed that Dr. Hung had in fact suffered headaches prior to his fall. Dr. Schuster replied that, assuming

> the patient did have a history of headaches in the days prior to [his fall], there is a reasonable probability that the patient's findings on the initial CT are due to an underlying medical condition that led to a brain hemorrhage than the possibility that all the findings on the CT scan are totally due to a traumatic fall.

After receiving this opinion, Guardian affirmed its November 30, 1998 denial of benefits. Guardian explained that making a determination on Mrs. Hung's claim required it to resolve the conflict between Dr. Hung's medical records and Mrs. Hung's affidavits.

Mrs. Hung filed a civil action regarding this denial to the district court. After the court directed the filing of dispositive motions, Mrs. Hung filed a cross-motion for summary judgment and a motion entitled "Motion to Amend *Ad Damnum* Clause of Second Amended Complaint," which alleged that her husband's annual earnings were $332,043, rather than $169,000 as previously alleged. The district court granted Guardian's motion for summary judgment and denied both of Mrs. Hung's motions. She now appeals.

## II.

The district court's grant of summary judgment is reviewed *de novo*, applying the same standards that the district court employed. *See Ellis v. Metro Life Ins. Co.*, 126 F.3d 228, 232 (4th Cir. 1997). ERISA plans, as contractual documents, are reviewed *de novo* by the court to determine the degree of discretion afforded to the plan

administrator. *See Booth v. Wal-Mart Stores, Inc. Assocs. Health & Welfare Plan*, 201 F.3d 335, 341 (4th Cir. 2000). When the plan confers discretion on a fiduciary and the fiduciary acts within the scope of that conferred discretion, the principles of trust law apply, and a fiduciary's "exercise of power is not subject to control by the court except to prevent an abuse by the trustee of his discretion." *Id.* (citing *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 111 (1989)). It is undisputed here that the Plan confers discretion. Thus, the fiduciary's "discretionary decision will not be disturbed if reasonable, even if the court itself would have reached a different conclusion." *Booth*, 201 F.3d at 341; *Haley v. Paul Revere Life Ins. Co.*, 77 F.3d 84, 89 (4th Cir. 1996). In general, "a decision is reasonable if it is the result of a deliberate, principled reasoning process and if it is supported by substantial evidence." *Ellis*, 126 F.3d at 233 (citations omitted). As discussed in our previous review of this case, however, because Guardian was acting under a conflict of interest, the court must determine whether its decision is consistent with the decision of a fiduciary acting free of a conflict of interest. *Bedrick v. Travelers Ins. Co.*, 93 F.3d 149, 152 (4th Cir. 1996) (citing *Bruch*, 489 U.S. 101, 109 (1989)).

### III.

#### A.  *Requesting Dr. Schuster to Reconsider His Opinion*

Upon remand, Guardian asked Dr. Schuster to ignore Mrs. Hung's evidence regarding headaches. The district court characterized this instruction as a credibility determination within the plan administrator's discretionary powers. We disagree.

While a plan administrator may resolve conflicts between medical reports, she may not withhold or edit inconsistencies within a patient's medical history to obtain a definitive medical report. Courts have repeatedly held that a claim administrator's resolution between competing medical opinions is not an abuse of discretion so long as the decision is reasonable. *See, e.g., Booth*, 201 F.3d at 345-46 (holding that the plan administrator did not abuse her discretion by denying benefits when faced with conflicting medical reports); *Elliot*, 190 F.3d at 606 (same); *Sheppard & Enoch Pratt Hosp., Inc. v. Travelers Ins. Co.*, 32 F.3d 120, 125 (4th Cir. 1994) (same). But this case

involves a conflict concerning a claimant's medical history, not a simple conflict in the proffered medical evidence.

This court previously found that shielding Dr. Schuster from Mrs. Hung's evidence rendered Guardian's conclusions based on his opinion unreliable. *See Hung*, 2000 U.S. App. LEXIS 18970, at *13-15. The new opinion is no more reliable because Dr. Schuster was shielded by hypothesis rather than ignorance.

## B. *Guardian's Ultimate Decision*

Under the modified abuse of discretion standard, the court must determine, "based on its review of the administrative record before the fiduciary at the time of its decision making, whether the administrator's decision is consistent with a decision that might have been made by a fiduciary acting free of the interests which conflict with those of the fiduciary." *See Ellis*, 126 F.3d at 233. The greater the incentive for the administrator or fiduciary to benefit himself by a certain interpretation of benefit eligibility, "the more objectively reasonable the administrator or fiduciary's decision must be and the more substantial the evidence must be to support it." *Id.*

Guardian cites *Booth* and *Ellis* as examples of this court refusing to disturb a conflicted administrator's resolution of conflicting evidence because there was substantial evidence to support the ultimate decision. "Substantial evidence," however, is not simply a mantra. The evidence in those cases was considerably greater than what is before the court in the instant case.

In *Booth*, the claimant sought reimbursement from her employee benefit plan for coronary angioplasty procedures. 201 F.3d at 338. The plan administrator denied her claim after determining that her condition was directly or indirectly related to a pre-existing condition. *Id*. Booth appealed, asserting that she had not previously been treated for heart disease. *Id*. According to the reviewing cardiologist, Booth's medical records revealed that she had been diagnosed with various forms of heart disease, and that she had been given medication for heart disease prior to the exclusionary period. *Id*. at 339. In that case, we found the evidence substantial enough to support the plan admin-

istrator's decision to overcome her general physician's statement to the contrary. *Id.* at 340.

In *Ellis*, the claimant sought total disability benefits for a mysterious set of symptoms she claimed prevented her from working. 126 F.3d at 230. Her experts came to conflicting conclusions about the cause of her symptoms, and none of the experts came to a conclusive diagnosis. *Id.* at 230-31. Three independent experts, however, all concluded that even if the claimant suffered from all the symptoms of which she complained, the symptoms would not have prevented her from working. *Id.* at 231. Given the lack of evidence that anything prevented the claimant from working, we found that the administrator had substantial evidence to support his denial of her claim. *Id.* at 234.

This case differs from *Booth* and *Ellis*. Doctors Schindler, Mandava and Brown were provided with all the information and concluded that hypertension did not lead to the fall. Guardian's physician, Dr. Dennison, concluded that hypertension likely caused the fall, but recommended that Guardian consult another physician. When that physician, Dr. Schuster, reviewed the case without the benefit of seeing Mrs. Hung's evidence, he agreed with Dr. Dennison. However, once Dr. Schuster saw Mrs. Hung's evidence he changed his opinion. He advised that he could no longer conclude that hypertension caused the fall. Thus, because Guardian based its denial principally on Dr. Schuster's opinion, and because Dr. Schuster, when provided with all the evidence, could not say that an underlying condition led to the fall, we find that Guardian's decision was not supported by substantial evidence. *See Ellis*, 126 F.3d at 233; *see also Hung*, 2000 U.S. App. LEXIS 18970, at *13-15.

Moreover, Guardian's decision cannot be considered objectively reasonable, as required under the modified abuse of discretion standard. *See id.* Guardian's decision was based on the mere speculation that the decedent may have had headaches, which may have indicated hypertension, which may have caused him to lose consciousness and fall. This evidence cannot overcome the common-sense notion that a man who falls while wearing flip-flop sandals and balancing a six-foot ladder on uneven steps has simply had an accident.

Finally, Mrs. Hung argues that the district court should have allowed her to amend her *ad damnum* clause. The district court denied

this motion as moot because it found she was not entitled to benefits. Upon remand, the district court should reconsider this motion. Mrs. Hung's other assignments of error are without merit.

## IV.

We find that the district court erred in holding that Guardian did not abuse its discretion in denying Mrs. Hung benefits. Since there are no remaining disputes as to the terms of the Plan, and since we previously remanded this case for essentially the same reason, we conclude that Mrs. Hung is entitled to accidental benefits allowable under the Plan. We reverse the district court's grant of summary judgment for Guardian, denial of summary judgment for Mrs. Hung and denial of her motion to amend, and remand to the district court with instructions to compute the award, enter judgment for Mrs. Hung, and determine appropriate attorney's fees and costs, if any.

*REVERSED AND REMANDED*