**Valerie WATSON, Plaintiff**

v.

**UNUMPROVIDENT CORP., Defendant**

**No. CIV.AMD 01–1316.**

United States District Court,
D. Maryland.

Feb. 19, 2002.

James P. Koch, Law Office, Baltimore, MD, for Plaintiff.

John Snowden Stanley, Jr., Semmes Bowen and Semmes PC, Baltimore, MD, for Defendant.

## MEMORANDUM

DAVIS, District Judge.

Plaintiff, Valerie Watson ("Watson"), brought this action against defendant, UnumProvident Corporation ("Unum"), pursuant to the Employees Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1132(a)(1)(B), seeking reinstatement of long-term disability benefits which she alleges were wrongfully terminated by Unum. Jurisdiction is exercised pursuant to 29 U.S.C. § 1132 and 28 U.S.C. §§ 1331, 1332.

Now pending are Unum's Motion to Remand and for Stay and the parties' cross-motions for summary judgment. I have carefully reviewed the parties' submissions, and no hearing is necessary. Local Rule 105.6 (D.Md.2001). For the reasons stated below, I shall grant Watson's motion for summary judgment and deny Unum's motions.

## I.

Watson, who was born in 1944, commenced work as a legal secretary in 1997. In 1998, she became totally disabled by a confluence of symptoms, including most significantly heart disease and cardiac arrest. She was covered by a group long term disability policy provided by her employer, with benefits payable through age 65 for total disability. Among other requirements, the policy defined "total disability" to require that the beneficiary be "unable to perform the important duties of his own occupation on a full-time or part-time basis because of ... sickness." From in or about September 1998 through November 2000, Watson received monthly disability payments pursuant to the policy in the approximate amount of $1300 monthly. Indisputably, Dr. Larry Perry, Watson's attending cardiologist, has been emphatically insistent that Watson has been continuously totally disabled since 1998; he submitted regular certifications, i.e., that Watson's cardiac condition and overall health status rendered her subject to "sudden death on the job," to Unum on a form provided by Unum for that purpose. Also, Watson was seen regularly during the period of her disability by a nurse practitioner at Johns Hopkins Hospital's outpatient cardiology clinic.

In mid–2000, Unum undertook a review of Watson's eligibility for continued receipt of benefits. In the course of this eligibility review, Unum attempted to obtain records relating to Watson's care, treatment and prognosis from various sources, including Dr. Perry's records and records from the Johns Hopkins outpatient clinic. In an extraordinary foul-up, after Unum made repeated requests to Dr. Perry for "all records to date" for Watson, Dr. Perry's office sent to Unum the records for a patient named "Valerie Johnson" rather than Watson's records. In an even more

extraordinary development, Unum failed to notice that the records it received from Dr. Perry were for someone other than its insured, "Valerie Watson."

(Thus, Unum did not notice that it had the wrong records until after Watson had filed this case challenging Unum's adverse eligibility determination and judicial discovery was underway. Unum thereupon filed the pending motion to remand, seeking permission to conduct a further review of Watson's file with the proper records from Dr. Perry. Watson timely opposed the motion to remand, insisting that the case should be adjudicated on the record that Unum saw fit to rely upon in terminating Watson's benefits. In view of Watson's opposition to the motion to remand, I ordered that the summary judgment motions should be fully briefed before I would consider whether remand should be allowed as Unum requested. For the reasons explained *infra*, I shall decline to remand this case to Unum.)

In November 2000, Unum determined that Watson was no longer totally disabled under the policy and terminated her benefits. The evidence on which Unum reached this conclusion was scant, to say the least. It appears that Unum relied primarily on a report from the nurse practitioner at Johns Hopkins that in the fall of 1999, Watson had expressed the intention to resume work as a legal secretary, and a further report that Watson was able to climb stairs without much difficulty and that she was able to walk from six to eight blocks daily without great fatigue. To be sure, however, there is significant contrary evidence in the record which seriously undermines the probative value of these alleged indicia of non-disability. Specifically, the records before Unum demonstrated affirmatively that Watson *had attempted* to return to work as a legal secretary in 1999, but after three days she could not

continue. Unum has seemingly ignored this evidence.

In any event, Watson, represented by counsel, appealed the termination of benefits decision pursuant to a procedure outlined in the policy as mandated by ERISA. After an exchange of correspondence and a series of missteps, in which Unum seemed to set deadlines for the receipt of additional information and then make adverse decisions in advance of the deadline it had established, Unum rejected the appeal. At no time has Unum sought an independent medical examination of Watson (as the policy permits), or the performance of any relevant tests or evaluations. To the contrary, Unum's review of Watson's eligibility for continued benefits was strictly a "paper" review of incomplete records by Unum's in-house personnel, none of whom prepared a report or detailed summary of his or her findings and conclusions. Watson timely instituted this action.

## II.

Pursuant to Fed.R.Civ.P. 56(c), summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In considering a motion for summary judgment, the facts, as well as the inferences to be drawn therefrom, must be viewed in the light most favorable to the nonmovant. *Matsushita Elec. Indust. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). A party moving for summary judgment is entitled to a grant of summary judgment only if no issues of material fact remain for the trier

of fact to determine at trial. *Id.* at 587, 106 S.Ct. 1348. A fact is material for purposes of summary judgment, if when applied to the substantive law, it affects the outcome of the litigation. *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505. "Summary judgment is not appropriate when there is an issue of fact for a jury to determine at trial, which is the case when there is sufficient evidence favoring the non-moving party upon which a jury can return a verdict for that party." *Shealy v. Winston,* 929 F.2d 1009, 1012 (4th Cir. 1991).

A party opposing a properly supported motion for summary judgment bears the burden of establishing the existence of a genuine issue of material fact. *Anderson,* 477 U.S. at 248–49, 106 S.Ct. 2505. The nonmovant "cannot create a genuine issue of fact through mere speculation or the building of one inference upon another." *Beale v. Hardy,* 769 F.2d 213, 214 (4th Cir.1985). *See O'Connor v. Consolidated Coin Caterers Corp.,* 56 F.3d 542, 545 (4th Cir.1995), *rev'd on other grounds,* 517 U.S. 308, 116 S.Ct. 1307, 134 L.Ed.2d 433 (1996). "When a motion for summary judgment is made and supported as provided in [Rule 56], an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in [Rule 56] must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). *See Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Anderson,* 477 U.S. at 252, 106 S.Ct. 2505; *Shealy,* 929 F.2d at 1012.

### III.

The threshold issue in this case is what standard of review to apply. ERISA does not dictate the standard of review for an action brought under § 1132(a)(1)(B) by a participant alleging that she has been denied benefits to which she is entitled under a covered plan. In *Firestone Tire and Rubber Co. v. Bruch,* 489 U.S. 101, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989), the Supreme Court established two standards of review to be applied to benefits determinations by plan administrators or fiduciaries. Applying principles of trust law, the Court held that:

> a denial of benefits under § 1132(a)(1)(B) is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan.

*Id.* at 115, 109 S.Ct. 948.

The Fourth Circuit has instructed that the standard of review to be applied when reviewing an administrator's benefits decision is determined by the following approach: (1) deciding *de novo* whether the plan language prescribes the benefit or confers discretion on the administrator to determine the benefit; (2) if the plan confers discretion, decide *de novo* whether the administrator acted within the *scope* of that discretion; and (3) if the administrator's decision is within the scope of the discretion conferred by the plan, review the merits for an abuse of discretion. *Feder v. Paul Revere Life Ins. Co.,* 228 F.3d 518, 522 (4th Cir.2000); *Haley v. Paul Revere Life Ins. Co.,* 77 F.3d 84, 89 (4th Cir.1996).

There is no dispute here that the plan assigns to Unum an unmistakable grant of discretion to determine benefits questions and, accordingly, the policy triggers the abuse of discretion standard of review.

 "[W]hen the district court reviews a plan administrator's decision under a deferential standard, the district court is limited to reviewing the evidence that was

before the plan administrator at the time of the decision." *Bernstein v. Capital-Care, Inc.,* 70 F.3d 783, 788 (4th Cir.1995)(citing *Sheppard & Enoch Pratt Hosp. v. Travelers Ins., Co.,* 32 F.3d 120, 123 (4th Cir.1994)). Where the plan affords the claims administrator discretionary authority, the administrator's interpretation of the plan "will not be disturbed if reasonable." *Firestone,* 489 U.S. at 114, 109 S.Ct. 948; *Davis v. Burlington Indus.,* 966 F.2d 890 (4th Cir.1992); *Sheppard & Enoch Pratt Hosp., Inc. v. Travelers Ins. Co.,* 32 F.3d 120, 125 (4th Cir.1994). Under the abuse of discretion standard, "the Trustees have not abused their discretion if their decision 'is the result of a deliberate, principled reasoning process and if it is supported by substantial evidence.'" *Brogan v. Holland,* 105 F.3d 158, 161 (4th Cir.1997), quoting *Bernstein,* 70 F.3d at 787.

The Fourth Circuit articulated the factors to be considered in determining whether a plan administrator has abused its discretion in denying benefits as:

(1) the scope of the discretion conferred;

(2) the purpose of the plan provision in which the discretion is granted;

(3) any external standard relevant to the exercise of that discretion;

(4) the administrator's motives; and

(5) any conflict of interest under which the administrator operates in making its decision.

*Ellis v. Metropolitan Life Ins. Co.,* 126 F.3d 228, 233 (4th Cir.1997)(quoting *Haley,* 77 F.3d at 89 (citing Restatement (Second) of Trusts § 187 cmt. d (1959))); *see also Booth v. Wal–Mart Stores, Inc.,* 201 F.3d 335, 340–43 (4th Cir.2000)(harmonizing circuit precedent and making clear that the "abuse of discretion" standard, and not the more deferential "arbitrary and capricious" standard applies, and further elaborating that the relevant review criteria include, but are not limited to, the following: (1) the language of the plan; (2) the purposes and goals of the plan; (3) the adequacy of the materials considered to make the decision and the degree to which they support it; (4) whether the fiduciary's interpretation was consistent with other provisions in the plan and with earlier interpretations of the plan; (5) whether the decision making process was reasoned and principled; (6) whether the decision was consistent with the procedural and substantive requirements of ERISA; (7) any external standard relevant to the exercise of discretion; and (8) the fiduciary's motives and any conflict of interest it may have.).

■ In this case, Unum operated under a potential conflict of interest which approached an actual conflict of interest in making the eligibility determination as to Watson because it both administers the plan and pays for the benefits received by the participants. Thus, Unum's denial of benefits results in profits to it in the amount of expenses avoided. Accordingly, I weigh this conflict as a factor in determining whether there has been an abuse of discretion and apply a sliding scale. *See Booth,* 201 F.3d at 343 n. 2 ("A fiduciary's conflict of interest, in addition to serving as a factor in the reasonableness inquiry, may operate to reduce the deference given to a discretionary decision of that fiduciary. We have held that a court, presented with a fiduciary's conflict of interest, may lessen the deference given to the fiduciary's discretionary decision to the extent necessary to 'neutralize any untoward influence resulting from that conflict.'") (citations omitted); *Bernstein,* 70 F.3d at 788 ("The more incentive for the administrator or fiduciary to benefit itself by a certain interpretation of benefit eligibility or other plan terms, the more objectively reasonable the administrator or fiduciary's deci-

sion must be and the more substantial the evidence must be to support it."). At bottom, then, I must determine whether Unum arrived at its non-eligibility determination in terminating Watson's benefits as the result of a deliberate, principled reasoning process and, if so, whether that determination was supported by substantial evidence. *Ellis, supra; Booth, supra.*

## IV.

■ Under the remarkable circumstances of this case, I am constrained to agree with plaintiff that Unum acted in bad faith and manifestly unreasonably in terminating benefits without reviewing the records from Dr. Perry, Watson's treating physician and the sole medical doctor who regularly certified her as totally disabled on the very form provided by Unum. The documents which Dr. Perry's office erroneously delivered to Unum during Unum's review of Watson's eligibility for continued benefits are in the record. *See* Def's Mot. to Remand and for Stay, Exh. 2. As a matter of law, it would have been impossible for any medical professional or trained insurance claims professional to have carefully reviewed those records (for a patient named "Valerie Johnson"), together with all the other records in Unum's possession (for a patient named "Valerie Watson"), and to have failed to discover that the records were not for the same person. While Dr. Perry's office bears responsibility for *delivering* the wrong documents to Unum, that antecedent error does not remotely excuse Unum's unexplained failure to *discover* the error, which discovery, as a matter of law, would have been made if a careful and objective review of all the evidence before Unum had been completed. Based on my review of the records, the only reasonable conclusion is that Unum never looked at the records in the first instance. It is impossible to conclude, therefore, that Unum's review process was

"principled" or reasonable, *Ellis, supra, Booth, supra,* and the record as a whole bears out this assessment.

These facts are all the more striking because Unum not only failed to review what its in-house reviewers had every reason to believe were Watson's records from Dr. Perry during *the initial review of Watson's continuing eligibility,* but Unum also failed to examine what its reviewers reasonably should have believed were Dr. Perry's records for Watson during *the appeal process,* although Unum seemingly asserted to Watson's counsel, falsely, that a specific review of Watson's records had been undertaken. Hence, viewed in full context, Unum's behavior in this case was far more than mere negligent inattention to its important procedural and substantive responsibilities as a plan administrator under ERISA, but it bordered on outright fraud.

That is, in turning down Watson's appeal in May 2001, Donald F. Jensen, identified as Unum's "Senior Appeals Consultant," conceded to Watson's attorney that certain records from Dr. Perry (dated May 1999) which Watson's counsel had provided to Unum during the appeal process (in April 2001) "were not included in the package of documents [Unum] received from Dr. Perry in August 2000. Since we had medical records in the file that was [sic] more recent than May 1999, . . . [the records provided by Watson's counsel in April 2001] would not alter our determination." *See* Pl's Opp., Exh. N. In no sense of the concept could Jensen have penned these words in *good faith,* for he is suggesting that Unum's in-house reviewers had compared the Perry documents received from Watson's counsel in April 2001 with the "Watson records" previously received from Dr. Perry, which Unum allegedly had in hand. But, again, it is clear that no such comparison was undertaken because if any

responsible person at Unum had bothered to compare the documents submitted by Watson's counsel in April 2001 with the documents received directly from Dr. Perry, he or she would have discovered that Unum did not have Watson's medical file from Dr. Perry but that Unum had a file for a patient named "Valerie Johnson."

As suggested above, therefore, the conclusion necessarily follows that Unum's idea of an objective, dispassionate review is to look through the available medical records in search of information that might *support its adverse determination*, but to *ignore record evidence that might support the continuation of benefits*. *Cf. Hung v. Guardian Life Ins. Co. of America*, 2002 WL 104234, *3, 28 Fed.Appx. 268 (4th Cir.2002)("While a plan administrator may resolve conflicts between medical reports, she may not withhold or edit inconsistencies within a patient's medical history to obtain a definitive medical report.")(unpublished). In my view, if, as here, the plan administrator/insurer's review of the file—both as an initial matter and during the sort of illusory "appeal" exposed on this record—is so cursory and perfunctory that plainly irrelevant records for another patient that were erroneously accepted as a part of the file under review are not discovered, an ERISA plan administrator operating under a conflict of interest has forfeited its right to a remand so that it can correct its flawed process.

Counsel for Unum does a yeoman-like job of attempting to put an acceptable "spin" on the summary judgment record by suggesting that Unum's remarkable error resulted because the "quality of the reports provided by Dr. Perry was poor" and, without a hint of irony, because Dr. Perry's notes were "almost illegible." *See* Def's Mem. at p. 12, n. 6. But Unum has elected, not surprisingly, to offer no affidavits or other factual support for these arguments by counsel, and the record is simply barren of any explanation for Unum's error that has any foundation other than counsel's unsupported contentions. In fact, of course, many of the "Valerie Johnson" records are *computer-generated records;* in any event, as Watson contends, many of the pages scattered throughout the entirety of the collection of documents are perfectly clear. Again, it is impossible to look at them in the course of looking through a file marked "Valerie Watson" and yet fail to notice immediately that the records are not records of a patient named "Valerie Watson" but are records of a patient named "Valerie Johnson."

■ Moreover, the contention that Unum did not rely on the "Valerie Johnson" records in reaching its adverse eligibility determination turns the summary judgment record on its head. The risk of harm to Watson's federally-protected rights under ERISA did not arise from the remote possibility that Unum would erroneously rely on another patient's records; surely, Unum would not. Rather, the risk of harm to Watson's ERISA rights inheres in Unum's choice to implement an unprincipled and unreasonable review process in which *it demonstrably looked only at selective records*. As the Fourth Circuit has noted, in discussing the important procedural protections embodied in ERISA and the Department of Labor's regulations implementing ERISA:

These procedural guidelines are at the foundation of ERISA. Congress intended that ERISA provide plan administrators and participants the opportunity and freedom to resolve internal disputes without necessarily having to resort to the expense and delay of the courts . . . . Given this goal, Congress assured plan participants of procedural fairness, by mandating that plan administrators provide a "full and fair review" of claims

and the specific reasons for claim denials. In the words of the Third Circuit, " 'full and fair review' must be construed not only to allow a pension plan's trustees to operate claims procedures without the formality or limitations of adversarial proceedings but also to protect a plan participant from arbitrary or unprincipled decision-making . . . ." *Weaver v. Phoenix Home Life Mut. Ins. Co.,* 990 F.2d 154, 157 (4th Cir.1993) (citations omitted). Unum's failure to discover the erroneous records is positive proof that Watson's ERISA rights suffered the very harm the two-pronged standard of review—procedural integrity and substantial evidence to support the plan administrator's adverse decision—is designed to avoid. *Id.; see also Ellis, supra; Booth, supra.*

As a matter of law, therefore, Unum did not look at the "Valerie Johnson" records, although Unum had every reason to believe the records were for "Valerie Watson" and accordingly, there is no reason to believe that it looked at (or genuinely considered) any of the records which militated in favor of a continuation of Watson's disability benefits. In other words, under the unique circumstances of this case, it is impossible to conclude that Unum's decision "is the result of a deliberate, principled reasoning process . . . ." *Brogan,* 105 F.3d at 161. It was exactly the opposite. *Cf. Johannssen v. District No. 1—Pacific Coast Dist. MEBA Pension Plan,* 136 F.Supp.2d 480, 501–09 (D.Md.2001).

■ Thus, under the circumstances here, it is not appropriate to permit a plan administrator/insurer laboring under a manifest conflict of interest to avoid the consequences of its unreasonable and unprincipled deliberative process through the expedient of a remand. As this case does not involve pension or life insurance benefits, a refusal to grant a remand so that Unum might cure its flawed process in terminating Watson's disability benefits is of no moment. That is, under the terms of the policy, Unum is free to conduct a further review, a "principled process," at its election. Case law supports a denial of a remand under the unique circumstances of this case. *See Weaver,* 990 F.2d at 159 ("[A] remand for further action is unnecessary here because the evidence clearly shows that Phoenix Home Life abused its discretion."); *cf. Quinn v. Blue Cross and Blue Shield Ass'n,* 161 F.3d 472, 477 (7th Cir.1998)("*Cases that call for reinstatement [of benefits, rather than a remand to the plan administrator] usually either involve claimants who were receiving disability benefits, and, but for their employers' arbitrary and capricious conduct, would have continued to receive the benefits,* or they involve situations where there is no evidence in the record to support a termination or denial of benefits.")(emphasis added); *Williams v. International Paper Co.,* 227 F.3d 706, 715 (6th Cir. 2000)("Hence, . . . the Plan Administrator's selective review of Plaintiff's additional medical evidence was an unreasonable basis to deny [Plaintiff's] disability benefits, and remand is not necessary."). Consequently, I shall deny the motion to remand.

In view of my conclusion that its unprincipled, if not fraudulent, deliberative process fatally undermines Unum's contention that its decision to terminate Watson's eligibility for disability benefits was not an abuse of discretion, I need not determine whether "substantial evidence" supports Unum's decision to terminate benefits. If pressed to determine that question, however, I would conclude that Unum's clearly erroneous finding that Watson went back to work for more than three days in late 1999, coupled with its failure under the circumstances to obtain an independent

medical evaluation of Watson, in light of the conflict of interest under which it conducted its in-house review, so undermined the soundness of its determination that its determination cannot withstand even a deferential "substantial evidence" review. *See Booth,* 201 F.3d at 343 n. 2, quoted *supra* p. 584. There is simply no basis, beyond Unum's in-house reviewers' *ipse dixit* conclusions that (1) the job of a legal secretary is "sedentary" and, based further on their highly selective reliance on incomplete medical records, that (2) Watson could walk up a flight of stairs and as many as eight city blocks without great difficulty, to refute Watson's compelling showing, including Dr. Perry's unimpeached professional opinion, that Watson's cardiac condition and overall health status rendered her subject to "sudden death on the job," and thus, that she was "unable to perform the important duties of [her] own occupation on a full-time or part-time basis because of ... sickness," consistent with the policy's definition of "total disability."

### V.

For the reasons stated, I am persuaded that application of the appropriate standard of review in this case compels the conclusion that Unum has abused its discretion in terminating total disability benefits due to Watson. This determination is without prejudice, of course, to Unum's right to conduct a further review of Watson's continued eligibility for benefits. Accordingly, I shall grant plaintiff's motion for summary judgment and deny defendant's motion for summary judgment. An order follows.

### ORDER

For the reasons stated in the foregoing Memorandum, it is this 19th day of February, 2002, by the United States District Court for the District of Maryland, OR-DERED

(1) That defendant's motion for summary judgment and motion to remand and for stay are DENIED; and it is further ORDERED

(2) That plaintiff's motion for summary judgment is GRANTED BY SEPARATE ORDER ENTERED HEREWITH; and it is further ORDERED

(3) That the Clerk of the Court shall CLOSE this case and TRANSMIT a copy of this Order, the following Order, and the foregoing Memorandum, to counsel of record.