CLAY, Circuit Judge,
dissenting in part.
I agree that the district court improperly granted summary judgment to Defendant on Defendant’s recoupment of overpayments claim. I disagree with the majority, however, that Defendant’s denial of benefits was the result of a “deliberate, principled reasoning process” because the evidence clearly shows that Defendant considered, in part, someone else’s medical records when it evaluated Plaintiffs case. I would therefore vacate the grant of summary judgment for Defendant on Plaintiffs denial of benefits claim and remand the case to the district court, with instructions for further remand to the plan administrator for a proper consideration of Plaintiffs claim for benefits.
I.
BACKGROUND
On September 16, 1996 Plaintiff was hired by Progressive Insurance Co. as a computer programmer/analyst. Plaintiff then enrolled in Progressive’s ERISA-governed disability benefits plan, for which Defendant was the claims administrator.
Plaintiff had a history of hypertension, which Plaintiff alleges was under control until February 1997, at which time Plaintiff underwent an appendectomy. Subsequent to the appendectomy, Plaintiffs recovery was difficult and resulted in an increase in his hypertension and a “cerebrovascular accident.” Plaintiff left work on June 5, 1997 due to hypertension and syncope,[1] and in October 1997 Plaintiffs treating physician diagnosed the likely cause of the syncope as a stroke, or brain stem infarct,[2] in early June 1997. After performing an MRI to confirm the infarct, Plaintiffs physician, Dr. Grubb, diagnosed Plaintiff with autonomic dysfunction resulting from damage to the brain stem area controlling autonomic function. Plaintiffs condition resulted in extreme migraines and fatigability, in addition to syncopal episodes. Plaintiff applied for and received disability benefits commencing in October 1997.
On October 7, 1999, Defendant requested reimbursement from Plaintiff for alleged over payments for the period of January 1, 1998 through September 30, 1999, during which time Plaintiff was also receiving social security disability payments. Defendant alleged that long term disability payments were offset under the plan to the extent of any social security disability monies received.
After 24 months of disability, Plaintiffs disability plan provided for continuing pay- *310 merits only if a claimant “cannot perform all of the material duties of any gainful occupation for which [claimant] [is] or may become reasonably fitted by training, education or experience.” (J.A. at 201.) Defendant therefore undertook a review of Plaintiffs disability status in 2000. In a letter dated July 13, 2000, Defendant informed Plaintiff that its review of Plaintiffs condition did not support Plaintiffs continued status as disabled. Defendant stated that information provided by Plaintiffs attending physician, a Dr. Grubb, indicated that there was no objective information which supported Plaintiffs ongoing disability. Defendant further noted that based on information from Dr. Grubb, it “appears your condition is under reasonable control and you would be able to perform the duties of sitting, computer keyboarding [and] programming, and phone work.” (J.A. at 201.) Defendant therefore terminated Plaintiffs disability benefits as of May 31, 2000.
On July 24, 2000 Plaintiff appealed Defendant’s termination of benefits through Defendant’s administrative appeals procedure. Defendant submitted a letter from Dr. Grubb which referenced the MRI confirming the brain stem stroke and repeating his diagnosis of autonomic disorder manifesting in cognitive impairment, severe migraines, and fatigability. The letter also stated Dr. Grubb’s opinion that Plaintiff “is disabled from his previous employment (and perhaps from many types of meaningful employment).” (J.A. at 171.) Defendant then referred Plaintiff for evaluation by independent medical personnel of the North American Medical Evaluations, Inc. Plaintiff was given a psychological evaluation and a medical exam. The psychologist determined that Plaintiff performed in the average range of cognitive function, exhibited mild impairment in some motor function, exhibited mild depression, and showed difficulty in maintaining alertness. The psychological report concluded that Plaintiff could return to work if given accommodations such as frequent breaks to refresh alertness.
Plaintiffs independent medical examination took place on November 21, 2000. In the letter notifying Plaintiff of the medical appointment, Defendant invited Plaintiff to “obtain and bring any medical records, X-ray films, MRI films and any test results to assist in this evaluation.” (J.A. at 169.) Defendant alleges that Plaintiff produced no MRI showing his brain stem infarct. Plaintiff alleges that Plaintiff brought the relevant MRI, dated September 29, 1997, with him to the medical evaluation, but that the physician refused to take the film from Plaintiff, saying instead that the physician would procure the MRI from the hospital. Plaintiff further alleges that his wife sent a copy of the relevant MRI to Defendant at some time.
The independent medical evaluation concluded that “[t]he patient has hypertension and depression. There is no clearcut explanation of his episodic complaints. Of note, however, I see no clearcut reason why this patient could not perform his previous employment.” (J.A. at 151.) Earlier in the letter, the physician noted that Plaintiff took Celexa for his depression. The physician further noted that while Plaintiffs wife reported to him an MRI revealing a stroke, the “official report ... on the head MRI study obtained through ... Akron General Medical Center [dated] October 23, 1998 was negative except for ‘mild bilateral maxillary and ethmoid sinusitis.’ ” (J.A. at 150.)
There is no indication in Plaintiffs medical records from his treating physicians that Celexa was described for depression. Rather, Celexa, while a popular antidepressant, appears to have been prescribed by Dr. Grubb to address Plaintiffs headaches and extreme fatigue. (See J.A. at 190.) Nothing in Plaintiffs medical records reveals a diagnosis of depression by *311 his attending physicians. (See J.A. at 228, Medical Provider Statement by Dr. Grubb, noting diagnosis of syncope and autonomic disorder, but not depression, and recording Celexa as a prescribed medication.)
In a letter dated April 2, 2001, Defendant denied Plaintiffs appeal of the termination of his disability benefits. The letter was addressed to Plaintiff, but contained the wrong address and the wrong social security number. The letter summarized Defendant’s assessment of Plaintiffs claim:
Your diagnosis is autonomic dysfunction syndrome, stroke secondary to anesthesia during surgery and cervical pain.
You have been out of work as a Computer Programmer/Analyst since June 5, 1997 due to hypertension syncope. Office notes indicate that you were told in October, 1997 that you may have had a stroke over the summer. Rehabilitation followed your case with the onsite individual from October 1997. In June, 1998, it appeared that you were released to return to work but you developed panic attacks therefore a psychiatric referral was made. You had medication changes that made you ill that psychiatric referral was cancelled and was not rescheduled. Other notes indicate that you had a cardiac cath[eter] on August 4,1999 with discharge on August 5, 1999 with possible surgery indicated, but no surgery was noted. On February 15, 2000 notes your doctor reported that you have had no recent syncopal episodes and your blood pressure was well controlled. You stated you may possibly have sleep apnea but sleep studies were normal.
There are numerous reports from you and your wife regarding your symptoms but there is very little objective medical information. The objective information that is present was all provided in the first 2 years of your disability. There is no clinical record provided to substantiate seizure disorder, no MRI report confirming a stroke and no record provided of cardiac eath findings. There are clear reports from your doctor’s officer of panic attacks and anxiety disorders, which responded to Xanax. There have been no observable, objective tests, which substantiate total disability to any reasonable occupation.
You reported you were unable to drive due to severity of fatigue and sleepiness, but surveillance is reported to clearly document otherwise.[3]
(J.A. at 374-75.)
There is no indication in Plaintiffs medical records that Plaintiff ever received a cardiac catheter or was ever even referred for such a procedure, and Plaintiff denies undergoing any. Plaintiff further alleges that the denial letter references medications that Plaintiff never took. Plaintiffs address was, at all relevant times, 372 East Cassell Ave., Barberton, OH 44203. The letter was addressed to Plaintiff at 6020 Periwinkle Dale, Seneca, SC 29672. Plaintiffs social security number is xxx-xx-2752. The letter referenced social security number xxx-xx-6220. (full social security numbers omitted for confidentiality purposes)
II.
ANALYSIS
A. The District Court Erred by Refusing to Permit Wilkins Discovery
This Court reviews the district court’s decision on whether to permit discovery *312 beyond the administrative record de novo. Cf. Putney v. Medical Mut, 111 Fed.Appx. 803, 806 (6th Cir.2004) (unpublished opinion).
Plaintiff argues that the district court should have granted Plaintiffs motion to either supplement the administrative record or remand for correction because Defendant violated Plaintiffs procedural due process rights when it refused to consider the September 27, 1997 MRI. Plaintiff presents evidence that the MRI had been available to Defendant (Plaintiffs wife having proffered the MRI to the physician performing the independent medical evaluation) in the form of an affidavit from Plaintiff and Plaintiffs wife; the affidavit had the referenced MRI attached. (See J.A. at 48-50.) Defendant asserts in briefs to this Court that the MRI’s lack of presence in the administrative record proves its unavailability to Defendant, but puts forth no evidence, save the state of the administrative record itself, in support of that assertion.
In Wilkins, this Court clarified when and to what extent a district court may go beyond the administrative record in reviewing an ERISA administrator’s decision. Wilkins v. Baptist Healthcare Sys., Inc., 150 F.3d 609, 618-19 (6th Cir.1998). This Court instructed district courts to follow a two-step process in adjudicating an ERISA benefit action:
1. As to the merits of the action, the district court should conduct a de novo [or arbitrary and capricious] review based solely upon the administrative record, and render findings of fact and conclusions of law accordingly. The district court may consider the parties’ arguments concerning the proper analysis of the evidentiary materials contained in the administrative record, but may not admit or consider any evidence not presented to the administrator.
2. The district court may consider evidence outside of the administrative record only if that evidence is offered in support of a procedural challenge to the administrator’s decision, such as an alleged lack of due process afforded by the administrator or alleged bias on its part. This also means that any prehearing discovery at the district court level should be limited to such procedural challenges.

Id.

Plaintiff has alleged a procedural violation by Defendant. If true, the procedural violation is significant, for it wrongfully precluded the only fully objective medical evidence of the cause of Plaintiffs condition from appearing in the administrative record. Under Wilkins, the district court should have permitted discovery to the extent the parties could adduce evidence as to whether Defendant had the September 1997 MRI available to it when ruling on Plaintiffs claim for continued benefits.
Should discovery have revealed that Defendant did have the MRI available to it, the district court could have followed one of two recourses. First, the district court could have permitted the parties to supplement the administrative record with the MRI and any relevant medical interpretations of the MRI. Id. Second, and perhaps more appropriately, the district court could have remanded the case to the administrator. VanderKlok v. Provident Life & Accident Ins. Co., 956 F.2d 610, 619 (6th Cir.1992). While remand is appropriate only in those cases where some useful purpose would be served from remand, the inclusion of the MRI in the administrative record, as the only objective evidence of the cause of Plaintiffs condition, is central to the benefits determination and therefore justifies such remand. See Kent v. United of Omaha Life Ins. Co., 96 F.3d 803, 807-08 (6th Cir.1996).
*313 B. The District Court Erred in Granting Summary Judgment to Defendants on Plaintiff’s Claim for Benefits

1. Standard of Review

In an ERISA benefits case, this Court reviews de novo a district court’s decision on the administrative record. See Spangler v. Lockheed Martin Energy Sys., 313 F.3d 356, 361 (6th Cir.2002). The general rule is to review a plan administrator’s denial of ERISA benefits de novo. Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989). However, where, as is the case here, a plan vests the administrator with complete discretion in making eligibility determinations, such determinations will stand unless they are arbitrary or capricious. Id.[4] A benefit denial is arbitrary and capricious if the administrative record cannot support the rationale of the benefits denial as a “reasoned explanation.” See Moon v. Unum Provident Corp., 405 F.3d 373, 381 (6th Cir.2005). The “explanation must be consistent with the quantity and quality of the medical evidence that is available on the record.” Id. (internal quotation and citation omitted).
Absent a procedural challenge, the review of the courts is confined to the administrative record as it existed on the date of the administrator’s decision. See Wilkins, 150 F.3d at 615. If the administrative record so limited supports the administrator’s action as a “reasoned” decision, the decision is not arbitrary or capricious. Williams v. Int’l Paper Co., 227 F.3d 706, 712 (6th Cir.2000). As this Court has recently observed, however, “the arbitrary- and-capricious ... standard does not require us merely to rubber stamp the administrator’s decision.” Jones v. Metro. Life Ins. Co., 385 F.3d 654, 661 (6th Cir. 2004). Indeed, “deferential review is not no review, and deference need not be abject.” McDonald v. Western-Southern Life Ins. Co., 347 F.3d 161, 172 (6th Cir. 2003).

2. Significant References to Medical Records Other Than Plaintiff’s Renders the Administrator’s Denial Arbitrary and Capricious

Defendant’s decision is unsupported by the record because Defendant’s denial letter contains such egregious errors going both to Plaintiffs identify and Plaintiffs medical records that Defendant’s decision can only be arbitrary and capricious.
By all indications, Defendant considered someone else’s medical records in conjunction with Plaintiffs records in making its 2001 benefits determination. The April 2, 2001 denial letter referenced the wrong address, the wrong social security number, and included references to medical treatments and conditions which Plaintiff never had, including a heart catheter, depression, and a number of drug prescriptions. Few administrator decisions could be more “arbitrary and capricious” than a denial of benefits in partial reliance on the medical records of someone else.
A Fourth Circuit district court has dealt with just such an administrator’s decision and concluded that a benefits decision based, in part, on medical records not belonging to the claimant revealed a decision process so flawed that it was “unprincipled *314 and unreasonable.” See Watson v. Unum-Provident Corp., 185 F.Supp.2d 579, 586 (D.Md.2002). This Court has always required that the record support the reasoning of an administrator’s decision. See Moon, 405 F.3d 373, 378 (6th Cir.2005). Someone else’s medical records cannot support a “reasoned decision” going to Plaintiffs claim for benefits. Summary judgment for Defendant was improper.
I therefore dissent from the majority’s affirmance of the district court’s summary judgment for Defendant on Plaintiffs denial of benefits claim.

. syncope: a temporary suspension of consciousness due to generalized cerebral ischemia (deficiency in blood). Dorland's Illustrated Medical Dictionary 1514 (25th ed. 1974).

. infarct: an area of coagulation necrosis in a tissue due to local ischemia resulting from obstruction of circulation to the area. Dorland’s Illustrated Medical Dictionary, supra note 1, at 778.

. Defendant had Plaintiff surveilled on May 11, 13, and 15, 2000. The surveillance reports indicated that Plaintiff was observed on May 11 operating a Mazda pick-up three times, and on May 13 he operated the same truck for a single trip to the local middle school. (J.A. at 198-200.)

. Plaintiff argues that the district court did not properly consider Defendant’s conflict of interest insofar as Defendant is both the claims administrator and the insurer. This Court has repeatedly held that such a conflict of interest does not change the standard of review, but is factored into the analysis going to whether the administrator’s decision was arbitrary and capricious. See Darland v. Forth Benefits Ins. Co., 317 F.3d 516, 527 (6th Cir.2003).