OPINION
PER CURIAM:
The Trustees of the United Mine Workers of America 1974 Pension Plan (the “Trustees”) seek review of the district court’s decision to award summary judgment in this benefits dispute to plaintiff Troy F. Harris, a disabled coal miner. Harris v. Holland, No. 2:01CV00148 (W.D.Va. Sept. 13, 2002) (the “Opinion”). By its Opinion, the court concluded that the Trustees had erred in denying Harris’s claim for disability pension benefits. Id. As explained below, we agree with the district court and affirm.
I.
A.
On September 4, 1987, while working as a mine electrician for Island Creek Coal Company in southwestern Virginia, Harris injured his lower back while lifting a 250-pound bull gear (the “1987 Mine Incident”). As a result of this injury, Harris immediately fell to the ground and was later hospitalized. An orthopedic surgeon, Dr. Jean M. Eelma, initially diagnosed Harris’s injury as a strain in the lumbar region of his back. Dr. Eelma discharged Harris three days later, on September 7, 1987, with instructions that he not return to work without her permission.
Harris returned to the hospital soon thereafter, on September 10, 1987, complaining of continuous pain in his lower back and episodes of numbness in both legs. Dr. Eelma observed that Harris suffered from “diffuse lumbar tenderness, worse at the L-5/S-1 level.”[1] As a result, on September 16, 1987, an MRI was performed on Harris’s lumbar spine. Based on the MRI, a radiologist diagnosed Harris with degenerative disc disease at the L-5/S-l level, with disc bulging resulting in stenosis of the L-5 neural exit foramina.[2] *853 The following day, September 17,1987, Dr. Eelma also reviewed the MRI results and diagnosed Harris with a “fair sized disc herniation at the L-5/S-1 level.”[3]
Harris returned to Dr. Eelma for followup appointments on October 8, 1987, and on October 29, 1987, during which he was treated for disc disease at the L-5/S-1 level. Finally, on November 12, 1987, Dr. Eelma gave Harris permission to return to his work in the coal mines. Although Harris worked the next day and on three subsequent days, he found his back pain to be intolerable. Two weeks later, Dr. Eel-ma determined that Harris had suffered a “flare of his degenerative disc disease,” and she authorized him to leave work temporarily.
Before the end of the year, Harris returned to the hospital for four treatments of the injury he suffered in the 1987 Mine Incident — on November 30, and December 7, 21, and 30,1987. Following a bone scan on December 30, 1987, doctors concluded that Harris suffered from degenerative osteoarthritis, “particularly evident at the level of L-5/S-1, with likely bulging of disc on right, and arthrosis of facets.” On January 5,1988, during yet another examination, Dr. Eelma observed that Harris had persistent low lumbar tenderness. Although she did not view Harris to be a surgical candidate, she opined that Harris could not “continue in his present state.” Dr. Eelma therefore recommended that Harris see her for anti-inflammatory and pain reliever injections at the L-5/S-1 level, and Harris did so on January 8, 1988. Finally, after nearly fifteen hospital visits and related doctor examinations and treatments, Harris was authorized to again return to work, which he did on February 22, 1988.
In 1995 and 1996, Harris was injured in two other incidents while working in the coal mines. First, on February 25, 1995, Harris injured his neck when he hit his head on a piece of mining equipment (the “1995 Mine Incident”). Harris nevertheless remained on the job and received no first-aid treatment. Second, on November 8, 1996, while attempting to lift a 150-pound piece of emonorail, Harris felt a sharp pain in his lower back (the “1996 Mine Incident”). As a result, Harris visited the hospital and was treated by Dr. Joshua P. Sutherland, Jr., a general practitioner. A back x-ray revealed degenerative changes in Harris’s lower back, and he received injections for back pain and was diagnosed with lumbar strain.
After approximately twenty-four years in the coal mines, Harris ceased working for Island Creek in February of 1997. On June 19,1997, while pushing a lawnmower, Harris felt sharp pain in his lower back, accompanied by pain in his right hip, radiation down his leg and groin, and stomach pain (the “Lawnmower Incident”). Harris visited the hospital the next day, where he advised the attending physicians that he had been experiencing back problems since the 1987 Mine Incident. A radiologist took x-rays of Harris’s spine and reported degenerative changes in the lumbar region.
On June 23, 1997, Harris returned to the hospital for a followup examination in connection with the Lawnmower Incident. Dr. Sutherland again examined Harris, *854 and he reported that Harris suffered from a severely decreased range of motion in his lumbar spine. Following an MRI, a radiologist observed disc protrusion at the L-5/S-1 level. Harris continued to see Dr. Sutherland for monthly followup examinations until May of 1998. As a result, Dr. Sutherland concluded that Harris was unable to work and that he was totally disabled. On March 16, 2000, in writing to the Trustees, Dr. Sutherland opined that “[t]he patient [Harris] is unable to do gainful employment as a direct result of advanced degenerative lumbar disc dysfunction” (the “Dr. Sutherland Letter”).
B.
On August 8, 1997, Harris applied for Social Security Disability Insurance (“SSDI”) benefits. The appropriate state agency denied Harris’s application for benefits on October 22, 1997, and that denial was upheld on January 20, 1998. Harris then requested an administrative hearing and, in September 1998, an Administrative Law Judge (“ALJ”) changed the initial decision and approved Harris’s application for SSDI benefits. In so doing, the ALJ concluded that Harris had been permanently disabled since the Lawnmower Incident, and he found that Harris’s “severe impairments” were “residuals of traumatic low back injury with radiculopathy in the lower extremities; arthritis in the neck, arms, and hands; and situational depression.” [4] In re Harris, Decision of Social Security Administration (Sept. 8, 1998).
On January 11, 1999, Harris applied to the Trustees for an award of disability pension benefits pursuant to the 1974 Pension Plan.[5] The Trustees’ Disability Pension Analyst, a registered nurse (the “Nurse Analyst”), denied Harris’s claim, relying on interpretive guidelines promulgated by the Trustees.[6] These guidelines are in question and answer format (“Funds Q & As”), and they provide for the consistent interpretation and application of the 1974 Pension Plan. The specific Funds Q & A of concern here, Funds Q & A 252, provides, inter alia, that a “disability must have been caused by the exertion or impact of some external physical force or object against the body or by the exertion or impact of the body against some external physical object....” Funds Q & A 252(3).[7] The Nurse Analyst relied on this *855 provision in deciding that the 1987 Mine Incident was not a “mine accident” under the 1974 Pension Plan. She based her decision on the premise that Harris was not in the process of lifting the bull gear when his 1987 injury occurred.
The Nurse Analyst further concluded that, even if the 1987 Mine Incident constituted a mine accident under the 1974 Pension Plan, the medical evidence failed to establish that the 1987 Mine Incident had resulted in Harris’s disability. The Nurse Analyst also rejected Harris’s claim that the 1996 Mine Incident had caused his disability, concluding that the Lawnmower Incident was solely responsible for Harris’s disability. On February 9, 2000, the Nurse Analyst, acting on behalf of the Trustees, denied Harris’s claim.
About a month later, on March 16, 2000, the Trustees received the Dr. Sutherland Letter regarding Harris’s back problems. Dr. Sutherland opined that “Mr. Harris’s current presenting complaints and qualifications for disability is [sic] directly related to the injury of 1987.... There is a direct cause and effect associated with the patient’s present back pain and the injury of 1987.” A week thereafter, on March 24, 2000, a Program Specialist for the Trustees sent Harris another denial letter, stating simply:
We regret to inform you that the letter submitted by Dr. Sutherland dated March 16, 2000 does not add any new information to your disability case. The letter will be added to your file and your disability pension remains denied.
On May 5, 2000, Harris requested that the Trustees conduct a hearing on his claim for benefits. Accompanying this request, Harris submitted, for the first time, a copy of the accident report on the 1996 Mine Incident. The Nurse Analyst again recommended the denial of benefits, asserting that the accident report failed to establish a causal link between the 1996 Mine Incident and Harris’s disability, and again asserting that the 1987 Mine Incident was not a mine accident. Although the Nurse Analyst reviewed Harris’s entire file, she failed to mention the Dr. Sutherland Letter, and she accordingly failed to assess its impact on Harris’s claim for disability benefits. On July 27, 2000, Harris was again notified by the Trustees that his claim for benefits was denied.
In October of 2000, Harris requested that the Trustees reconsider his claim for disability benefits and, in support thereof, submitted an accident report on the 1995 Mine Incident. In response, the Nurse Analyst conducted another review of Harris’s file and, on November 30, 2000, she again recommended the denial of Harris’s claim. As bases therefore, she asserted the following: (1) no treatment records were on file for the 1995 Mine Incident, and it therefore could not have caused Harris’s disability; (2) Harris continued to *856 work after the 1996 Mine Incident, and it thus could not have caused his disability; and (3) the 1987 Mine Incident did not constitute a mine accident under the 1974 Pension Plan. Although the Nurse Analyst acknowledged the existence of the Dr. Sutherland Letter, she did not make any findings or draw any conclusions concerning its contents.
On February 5, 2001, Harris was informed by the Trustees’ Hearing Officer that he would receive a hearing concerning the Nurse Analyst’s finding that the 1987 Mine Incident did not constitute a mine accident under the 1974 Pension "Plan. During a March 27, 2001, telephonic hearing on this issue, Harris and Glenn Herbert, a coworker and an eyewitness to the 1987 Mine Incident, each testified as to the specific events of that day. Herbert, who was aiding Harris in lifting the bull gear, testified that, contrary to the finding of the Nurse Analyst, Harris was in the process of lifting the bull gear when his back was injured.[8] In light of this evidence, the Hearing Officer overruled the Nurse Analyst and found that Harris was in the process of lifting the bull gear when he injured his back. Based upon this finding, the Hearing officer reversed the Trustees on the 1987 Mine Incident, concluding that it constituted a “mine accident” under Funds Q & A 252.
In light of the Hearing Officer’s decision, the Trustees reconsidered Harris’s claim for disability pension benefits. Once again, however, the Nurse Analyst recommended denying Harris’s claim. On this occasion, she asserted that, although the 1987 Mine Incident constituted a mine accident under the 1974 Pension Plan, it did not result in Harris’s disability. Her conclusion on this point was premised solely on the fact that Harris was able to perform his regular work duties, without further treatment on his injured back, from January of 1988 until February of 1998. The Nurse Analyst asserted that this fact mandated the conclusion that the 1987 mine accident did not result in Harris’s disability. Again, however, she made no analysis with respect to the Dr. Sutherland Letter, stating only that”[a]lthough Dr. Sutherland drew a direct relationship between the 1987 injury and the disability of June 21, 1997, the records do not support this conclusion.” As a result, the Trustees, on June 12, 2001, again denied Harris’s claim for disability benefits.
On December 10, 2001, Harris appealed the Trustees’ decision to the district court for the Western District of Virginia. On September 13, 2002, that court reversed the Trustees and awarded summary judgment to Harris, thereby granting disability pension benefits to him. Harris v. Holland, No. 2:01CV00148 (W.D.Va. Sept. 13, 2002). The Trustees have filed a timely notice of appeal, and we possess jurisdiction pursuant to 28 U.S.C. § 1291.
II.
We review de novo a district court’s award of summary judgment, employing the same standards applied by the district court. Brogan v. Holland, 105 F.3d 158, 161 (4th Cir.1997). When benefits plan trustees are vested with discretionary authority concerning eligibility for benefits, a reviewing court examines their decisions for abuse of discretion. Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 111, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989). Because the Trustees exercise such discretion, we review their denial of disability *857 benefits for abuse of discretion, and a decision of the Trustees is not to be disturbed if it is supported by substantial evidence. See Bernstein v. CapitalCare, Inc., 70 F.3d 783, 787-88 (4th Cir.1995).
III.
Pursuant to the 1974 Pension Plan, an applicant for a disability pension must, in order to secure benefits, satisfy three criteria: (1) he must be totally disabled, as evidenced by an SSDI award; (2) he must have been injured in a mine accident; and (3) he must demonstrate that his disability is “a result of a mine accident.” See 1974 Pension Plan, Art. II pt. C. The parties agree that the first two elements of this three-part test are satisfied, i.e., (1) Harris is disabled, as evidenced by his SSDI award; and (2) the 1987 Mine Incident constitutes a mine accident. The sole issue in this appeal concerns the third criterion — whether Harris’s disability was a result of the mine accident. As explained below, we agree with the district court that the 1987 Mine Incident resulted in Harris’s disability, and we also agree that the Trustees’ decision is not supported by substantial evidence.[9]
A.
In their appeal, the Trustees maintain that the 1987 Mine Incident did not result in Harris’s disability because he thereafter worked in the mines for ten years without receiving further treatment for his 1987 back injury. In order to properly assess this contention, we must analyze and apply our precedents in Boyd v. Trustees of the United Mine Workers Health & Retirement Funds, 873 F.2d 57 (4th Cir.1989), and Robertson v. Connors, 848 F.2d 472 (4th Cir.1988), which discuss the proper procedures for determining whether a mine accident resulted in disability under the 1974 Pension Plan.
In our Robertson decision, the claimant had strained his neck in 1980 when he was thrown from a coal shuttle car. Robertson, 848 F.2d at 473. Robertson subsequently received an SSDI award dating back to his mine accident, but the Trustees nevertheless denied his claim for benefits under the 1974 Pension Plan. They reasoned that Robertson had been hospitalized for anxiety and tension in 1972, for a neck injury in 1977, and for chest pains in 1979, and that his physical and psychological ailments thus existed prior to the 1980 mine accident. Id. at 474 & n. 2. On appeal, however, we ruled that the proper analysis in such a proceeding is not whether the mine accident was the sole cause of disability, or even the most significant cause thereof, but whether the mine accident was a proximate cause of disability. Id. at 475. As Judge Sprouse explained:
The only reasonable interpretation of the requirement that total disability be ‘the result of a mine accident,’ therefore, is that it requires total disability to have been proximately caused by the mine accident. That is, if the plaintiff was injured in a mine accident and that injury, whether in combination with a previous or subsequent condition, is substantially responsible for plaintiffs inability to perform his job ... then his total disability results from a mine accident.
Id. (quoting Horn v. Mullins, 498 F.Supp. 1197, 1200 (W.D.Va.1980), aff'd, 650 F.2d 35 (4th Cir.1981)) (emphasis added). Although Robertson’s mine accident caused a relatively minor neck injury, and although *858 his neck injury aggravated an earlier non-mine-related neck injury, we found that his accident was nevertheless substantially responsible for his disability. And, because a disability need not be solely caused by a mine accident in order to be “the result of a mine accident,” Robertson was entitled to benefits under the 1974 Pension Plan. Accordingly, we reversed the district court, which had upheld the Trustees’ denial of disability benefits.
We also addressed the causation analysis process in our 1989 Boyd decision. In Boyd, the claimant had suffered a cervical spine sprain when timber fell on her shoulder while she worked in the coal mines. Boyd, 873 F.2d at 58. Boyd was later awarded SSDI benefits based on her mental and emotional impairments. Id. The Trustees denied benefits to Boyd under the 1974 Pension Plan, however, on the ground that her mine accident did not result in disability because her symptoms had appeared three years earlier when she was injured in an automobile accident. Id. at 58-59. We again reversed the denial of benefits, emphasizing the reasoning of Robertson. See id. at 59. As we observed, “[wjhatever the contributions of her prior mental and emotional condition and whatever the actual physical injury directly suffered in the mine accident, Boyd’s mine accident was ‘substantially responsible’ for her total disability as found for SSDI purposes.” Id. at 60.
The Trustees’ denial of Harris’s claim for benefits contravenes the mandate of Robertson and Boyd. First, the fact that Harris was able to return to work following the 1987 mine accident does not necessarily mean that the accident was not substantially responsible for his disability. While the 1987 Mine Incident may not have been the sole cause of Harris’s disability, the proper inquiry is whether the accident was substantially responsible for his disability, not whether it was last in chronological order. Boyd and Robertson support the proposition that a mine accident can result in the total disability of a miner, even though it combined with a previous (as in Boyd and Robertson) or subsequent injury (as in this case).[10] Boyd, 873 F.2d at 59; Robertson, 848 F.2d at 475. Although the 1987 Mine Incident may have combined with the Lawnmower Incident and the other two incidents to render Harris totally disabled, the 1987 accident is nonetheless substantially responsible for Harris’s disability. As the district court explained, “clearly that first back injury in 1987 was a continuous problem until a final exam by Doctors in 1998. The first Doctor who saw Claimant found that he had, according to the MRI, a disc problem at L-5/S-1 and the last Doctor who treated claimant found he had a disc problem at L-5/S-1.” Opinion at 15. Importantly, the ALJ concluded that Harris was permanently disabled as a result of a “traumatic” (i.e., “a wound or injury”) low back injury. It is thus illogical to conclude that Harris’s 1987 traumatic low back injury, for which he was treated approximately fifteen times, was not a proximate cause of his permanent disability.
*859 It is not insignificant to our analysis that the Trustees disregarded the opinion of Dr. Sutherland. In his letter, Dr. Sutherland opined that “Mr. Harris’ current presenting complaints and qualifications for disability is [sic] directly related to the injury of 1987.” Although we cannot and do not mandate that the Trustees accord special weight to the views of a claimant’s treating physician, the Trustees are not entitled to “arbitrarily refuse to credit a claimant’s reliable evidence, including the opinions of a treating physician.” Black & Decker Disability Plan v. Nord, 538 U.S. 822, 123 S.Ct. 1965, 1972, 155 L.Ed.2d 1034 (2003). And although we cannot “impose on plan administrators a discrete burden of explanation when they credit reliable evidence that conflicts with a treating physician’s evaluation,” id., we are obliged to ensure that the Trustees “ ‘provide adequate notice in writing to any participant or beneficiary whose claim for benefits ... has been denied, setting forth the specific reasons for such denial, written in a manner calculated to be understood by the participant.’ ” Id. at 1970 (quoting 29 U.S.C. § 1133(1)). In this setting, the Trustees simply decided to ignore the essentials of the Dr. Sutherland Letter, and they failed to provide any basis for doing so.[11] As the district court aptly explained, “Dr. Sutherland has treated the plaintiff for some years during the time he has received his social security, and his opinion ... would be entitled to great weight in this case. The trustees apparently have given no consideration whatsoever to Dr. Sutherlands [sic] opinion.” Opinion at 3. Because the Trustees ignored Dr. Sutherland’s opinion, they failed to properly analyze the proximate cause issue.
B.
Finally, the Trustees maintain that a progressive disease, such as degenerative disc disease, is specifically excluded from the 1974 Pension Plan. Pursuant to Funds Q & A 252(2), a miner is totally disabled as a result of a mine accident only if his disability is definite, meaning that it is “traceable to a definite time, place, and occasion which occurred within the course of the mine worker’s employment.” Funds Q & A 252(2) goes on to exclude progressive diseases from this definition, stating that “[a] progressive disease does not meet this test and therefore cannot be a disability that resulted from a mine accident.” In light of the progressive disease proviso in Funds Q & A 252(2), the Trustees contend that Harris’s disability resulted from a degenerative process not covered by the 1974 Pension Plan. To the contrary, however, the Trustees failed to properly apply the guidelines it adopted in Funds Q & A 252(2). As explained below, its progressive disease proviso does not apply to the circumstances underlying Harris’s claim.
As we have previously explained, “the ‘progressive diseases’ proviso should be read not as an exception to the [enumerated] ... example[s] in Q & A 252[ ], but rather as an instruction on how to handle situations that do not fall into any of the enumerated examples of ‘mine accidents’ in Q & A 252.” Richards v. United Mine Workers of Am. Health & Ret. Fund, 895 F.2d 133, 137 (4th Cir.1990). In Richards, the claimant suffered chest pains while lifting a hundred pounds of timber at a mine site. He was later hospitalized, and the doctors advised him that he had experienced a heart attack and suffered from *860 progressive heart disease. Id. at 134. Relying on the progressive disease proviso, the Trustees contended that heart disease, not mine work, caused Richards to suffer his heart attack, and they denied his claim for benefits. Id. at 136. The district court reversed, and we agreed with the district court. We explained that, under the example found in Funds Q & A 252(k), a mine accident occurs when “ ‘a miner suffers a heart attack while pushing a heavy object in the normal course of his job.’ ” Id. at 137 (quoting Funds Q & A 252(k)). Because Richards was lifting a heavy object at the mine site when his heart attack occurred, he fell within the example enumerated in Funds Q & A 252(k), and the progressive disease proviso did not apply. Id. As we further explained, “[fin essence, Q & A 252(k) establishes that heart attacks that occur during heavy lifting in the mines are caused in substantial part by the miner’s work. If the conditions of Q & A 252(k) are met, the Trustees are foreclosed from further inquiry into the actual cause of the heart attack.” Id.
The logic of Richards applies with equal force here. Under the example set forth by the Trustees in Funds Q & A 252(j), a coal miner is disabled as a result of a mine accident if he “injures his back lifting a heavy object in the normal course of his job.” This is precisely what happened to Harris in the 1987 Mine Incident. The Hearing Officer, in her decision, specifically found that Harris was lifting the 250-pound bull gear when he injured his back in 1987. Harris’s condition therefore falls under the example enumerated in Funds Q & A 252(j), because he was injured while “lifting a heavy object in the normal course of his job” in the coal mines. Accordingly, the progressive disease proviso does not apply to Harris’s claim, and his disability satisfies the requirement of definiteness in Funds Q & A 252(2). Therefore, the Trustees’ contention on this point must also be rejected.
IV.
Pursuant to the foregoing, we affirm the Opinion of the

AFFIRMED.

. The symbol L-5 represents one of five lumbar vertebrae which are located between the thorax and the pelvis. Dorland's Illustrated Medical Dictionary 961 (28th ed.1994). The symbol S-l represents one of five sacral vertebrae which form the sacrum, a triangular bone located between the lumbar vertebrae and the coccyx. Id. at 347, 1479. The S-l is located just below the L-5.

. Stenosis identifies the "narrowing or stricture of a duct or canal.” Dorland’s Illustrated *853 Medical Dictionary 1576 (28th ed.1994). Foramina is the plural of foramen, which means "a natural opening, or passage; a general term for such a passage, especially one into or through a bone.” Id. at 648.

. The term herniation is used to describe "the abnormal protrusion of an organ or other body structure through a defect or natural opening in a covering, membrane, muscle, or bone.” Dorland’s Illustrated Medical Dictionary 759 (28th ed.1994).

. The term traumatic refers generally to "a wound or injury.'' Dorland’s Illustrated Medical Dictionary 1735 (28th ed.1994). Radiculopathy is used to describe a "disease of the nerve roots." Id. at 1404.

. The 1974 Pension Plan governs the 1974 Pension Trust, which is a multi-employer employee pension plan covered by the Employee Retirement Income Security Act ("ERISA”), 29 U.S.C. §§ 1001-1461. The 1974 Pension Plan provides benefits to plan participants who become totally disabled as a result of mine accidents. It provides, in relevant part:
A Participant who (a) has at least 10 years of signatory service prior to retirement, and (b) becomes totally disabled as a result of a mine accident ... shall, upon retirement ... be eligible for a pension while so disabled. A Participant shall be considered to be totally disabled only if by reason of such accident such Participant is subsequently determined to be eligible for Social Security Disability Insurance Benefits....
1974 Pension Plan, Art. II pt. C.

. The 1974 Pension Plan authorizes the Trustees to "promulgate rules and regulations to implement this Plan....” 1974 Pension Plan, Art. VIII pt. B.1.

. Pursuant to the guidelines promulgated by the Trustees, a miner is totally disabled as a result of a mine accident if three conditions are satisfied. The miner's disability must satisfy the criteria of (1) unexpectedness, (2) definiteness, and (3) force or impact. More specifically, Funds Q & A 252 provides as follows:
Q. The 1950 and 1974 Benefit and Pension Plans provide benefits to certain per *855 sons who are totally disabled as a result of a mine accident. For purposes of these provisions, what test must be met for a finding that a miner was “disabled as the result of a mine accident?”
A. The following three characteristics must be present: (1) Unexpectedness: The disability must have been unlooked for and unforseen; (2) Definiteness: The disability must be traceable to a definite time, place, and occasion which occurred within the course of the mine worker’s employment.
A progressive disease does not meet this test and therefore cannot be a disability that resulted from a mine accident; (3) Force or Impact: The disability must have been caused by the exertion or impact of some external physical force or object against the body or by the exertion or impact of the body against some external physical object; i.e., not simply as a result of the mine worker’s own physical condition.
Funds Q & A 252.

. Harris also submitted affidavits to the Hearing Officer from three other employees, the Shift Foreman, the Lampman and the Load-out Operator. All three assisted in transporting Harris out of the mine after he was injured; however, none witnessed the accident.

. Because we agree with the district court that the 1987 Mine Incident caused Harris's disability, we need not assess whether the 1995 or 1996 Mine Incidents also resulted in his disability.

. The circumstances underlying the Robertson and Boyd decisions differ slightly from the circumstances here. In those situations, the Social Security Administration determined that the applicant's disability commenced on the date of his mine accident. Here, the ALJ concluded that Harris's disability commenced on the date of the Lawnmower Incident. Both Robertson and Boyd make clear, however, that an applicant's disability onset date need not be the same as his mine accident. The proper inquiry is whether the mine accident proximately caused the disability, even if the accident combined with a subsequent non-mine-related accident to render the miner totally disabled. See Boyd, 873 F.2d at 59; Robertson, 848 F.2d at 475.

. We note with interest the paradox that, although the Nurse Analyst ignored Dr. Sutherland's conclusion that the 1987 Mine Incident caused Harris’s disability, she relied heavily on Dr. Sutherland's views in reaching her conclusions as to Harris’s medical condition.